**GRIFFIN WELLPOINT CORPORA-TION, Plaintiff, Appellant,**

v.

**MUNRO–LANGSTROTH, INC., Defendant, Appellee.**

No. 5446.

United States Court of Appeals
First Circuit.

July 31, 1959.

Nathan Greenberg, Boston, Mass., with whom Edward Murphy, Boston, Mass., was on brief, for appellant.

Edward C. Park, Boston, Mass., with whom Withington, Cross, Park & McCann, Boston, Mass., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Circuit Judge (Retired).

Griffin Wellpoint Corporation, organized under the laws of New York, appeals

from a judgment for defendant, a Massachusetts corporation, entered by the district court pursuant to a directed verdict.

The complaint stated a cause of action for breach of contract, jurisdiction having been based upon diversity of citizenship. Under a contract dated November 26, 1956, between the parties, two so-called Griffin Wellpoint pumps, with fittings, accessories and other equipment to install the pumps, were leased to the defendant specifically for use at a bridge job located at Rochester, New Hampshire. The lessee agreed to pay a monthly rental for a minimum period of one month. There was provision for a decrease of such monthly rental payments, so that the rate for the fourth month and every month thereafter was only about sixty per cent of the first month's rent. By the "Uniform Rental Conditions" appearing on the reverse side of the agreement form, the lessee was bound to take all responsibility for the operation of the equipment during the period of the lease. The lessee was also to notify the lessor at least ten days prior to the date of return of the equipment at the completion of its use. The lessee also agreed to "pay for any and all expenses involved for parts and labor, whenever repairs are necessary for the maintenance of the equipment * * * [and] keep the equipment in good operating condition and return same to Lessor in as good condition, and dismantled into same units, as when delivered to Lessee. In the event Lessee returns equipment in a damaged condition, Lessor will repair or replace said equipment and Lessee agrees to pay for the cost of such repairs or replacements." The contract further stipulated that the lessee should provide "full insurance coverage" for all losses and damages from any cause during the life of the agreement. It is conceded that the lessee did not so insure, but the breach of this clause was not pleaded in the complaint and is not before the court.

Finally, the contract specified that the agreement should be interpreted in accordance with the law of the State "where accepted by" the lessor; it is undisputed that the lessor corporation accepted the lease contract and executed it in New York State. Moreover, it appears that the lessee took delivery of the leased equipment in New York City, and that payments were to be made to the lessor in New York. There can be no doubt, as both parties agree, that the court is bound to apply the substantive law of New York.

The pumps in question, pictured in an exhibit contained in the record, are self-contained units each of which is mounted on its own carriage and wheels and somewhat resembles a tractor. The defendant used them in order to lay the underwater foundations for a bridge being constructed as part of a state highway in New Hampshire. It seems that the temperature had dropped far below zero, and to prevent freezing of the pumps the lessee covered them with a tar paper housing and employed propane fuel heaters. While these heaters were being lighted on January 1, 1957, an explosion and fire occurred which burned the paint off the pumps, destroyed rubber parts, melted some metal, and warped the frames of the pumps.

The lessee promptly advised lessor of the damage and during the same week returned the damaged equipment to the lessor. The latter replaced the equipment on January 8, 1957. The lessor appraised the salvage value of the returned equipment at $600.00, which it offset against a total value assigned to the equipment destroyed of $10,213.90. On February 5, 1957, the lessor sent an invoice for the balance of $9,613.90, which invoice was received by the lessee.

This estimated charge appeared on the lessor's monthly statement to the lessee dated March 1, 1957, and was presumably carried forward in the April statement. In any event, the statement sent by the lessor on May 1, 1957, shows a credit of $9,613.90 and shows also a balance then owed by the lessee in the sum of $352.61, a substantial amount of which was paid

on August 26, 1957. It is not clear, and it is unimportant, whether or not the remaining balance of $96.07 from that job has been paid.

The undisputed testimony is that this credit was made to reflect a payment which had been received by the lessor upon an insurance policy taken out and maintained by the lessor, though it was under no contract obligation to do so. The president of the lessee company testified that, "when the accident happened, I called Mr. Hush [the president of Griffin Wellpoint Corp.] * * * and asked him if he had insurance to cover this, and he said he did. With similar equipment with a company I know that those rental rates are partly based on the insurance they pay to maintain the pumps, and you pay for it as a rental. And Mr. Hush told me the pumps were insured." Mr. Hush testified that he knew that the credit of $9,613.90 was being given to the lessee and that this credit was made "because we had then been paid by our insurance company. That was the amount we received, so we credited the full amount to" the lessee.

On September 9, 1957, just eight days after the date of the monthly statement rendered by the lessor showing a balance due of only $96.07, a complaint was filed in the name of Griffin Wellpoint Corp. against the lessee, alleging diversity of citizenship and the making of a contract under which the lessee had agreed to pay the cost of repairs or replacements, because of which judgment was demanded in the sum of $9,613.90, with interest from February 5, 1957.

The defendant lessee's answer set forth as a "Second Defence" that: "After the pumps mentioned in the complaint had been returned to the plaintiff by the defendant, the plaintiff and the defendant entered into a new agreement by which plaintiff released and discharged defendant from all liability for damage to the pumps." As a "Third Defence" the answer stated: "On May 1, 1957, the plaintiff rendered the defendant an account crediting the defendant with the amount claimed in the complaint and showing a balance due of $352.61, and the defendant accepted the same as an account stated."

At the trial of the case before a jury there were only two witnesses, the presidents of the two companies, who testified substantially as outlined above. The contract between the parties and a picture of a pump were received as exhibits. On cross-examination the defendant introduced four more exhibits. The plaintiff rested and the district judge then in substance granted the defendant's motion for a directed verdict, saying to the jury that the credit given plus the oral statements by President Hush had constituted a "waiver" and that the statement of May 1, 1957, was an account stated. The verdict was returned as directed and judgment entered thereon for the defendant.

At the oral argument before us, a question much discussed was whether the real plaintiff here was the lessor Griffin Wellpoint Corp. or its insurer, Federal Insurance Company, which had made the payment to the lessor on account of the insurance policy maintained by the lessor, this payment having given rise to the credit of May 1, 1957. This question was not resolved below. In explaining to the jury why he had decided to direct a verdict for the defendant, the district judge remarked that the suit "may or may not have been brought by the plaintiff, it may have been brought by the insurance company as a subrogated plaintiff."

Fortunately the real plaintiff's identity makes no difference in this case. If we assume that Griffin Wellpoint Corp. is actually maintaining this action, there could be no problem of a double recovery since, if Griffin Wellpoint Corp. should recover the judgment against defendant which it seeks in the complaint and collect the same, it could have suffered no loss on account of the pumps and therefore it would be bound to return to the insurance company the payment which it had made to the lessor. On the other hand, if the actual plaintiff behind this litigation is really the insurance company, as we strongly suspect it is, then

the claim of the insurance company as a subrogee by operation of law cannot rise higher than that of the Griffin Wellpoint Corp.; in order to establish a claim against this defendant, the insurance company initially has to put itself in the shoes of the lessor corporation. If as a matter of law Griffin Wellpoint Corp. did discharge the lessee's liability, and thus acted wrongfully with respect to its insurer, the latter's remedy is to make a claim against Griffin Wellpoint Corp., not one against the defendant.

■ The lessor's claim that the district court erred in sustaining the defense of "waiver" is primarily based upon an argument that consideration is required for a waiver to be effective under the law of New York, and that in this case there was no consideration. The answer to this claim is clear under § 33 of the Personal Property Law of the State of New York, Laws, which specifically provides for the validity of five types of agreements made without consideration, the second of which, particularly relevant here, is as follows:

"2. An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement changing, modifying or discharging such contract, obligation, lease, mortgage or security interest, shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent."

There was clearly an agreement, cf. In re Wanninger's Estate, Sur.Ct., 1942, 34 N.Y.S.2d 326, and a signature, e. g., Cohen v. Wolgel, App.T.1919, 107 Misc. 505, 176 N.Y.S. 764, affirmed 1920, 191 App.Div. 883, 180 N.Y.S. 933, both within the meaning of the statute.

■ Nor do we see why the statement of May 1, 1957, accepted by the lessee,

did not amount to an "account stated", thereby fixing the amount of the lessee's liability. The parties stood in the relation of debtor and creditor. The lessee undoubtedly owed the lessor something, but the amount of the debt was originally unliquidated, due to the necessity of estimating values. And then the account was rendered and accepted. See Davison v. Klaess, 1939, 280 N.Y. 252, 20 N.E.2d 744. See also Siepka v. Bogulski, Sup.Ct. 1937, 164 Misc. 831, 299 N.Y.S. 1018; Parsons v. Batchelor, 1st Dept. 1931, 233 App.Div. 517, 253 N.Y.S. 728.

We think that this appeal is obviously frivolous and vexatious. Also, we do not like some of the tricks of advocacy indulged in by counsel for appellant to lend apparent substance to its position. Thus, in its main brief a sentence is quoted from the opinion of the New York Court of Appeals in Ripley v. Aetna Ins. Co., 1864, 30 N.Y. 136: "It seems to me, that a waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract, or forfeiture of the condition." 30 N.Y. at page 164. No reference is made in the brief to a footnote included in the report of the court's opinion, citing later New York cases, to the effect that, "It has since been decided, that a waiver of the conditions of a policy of insurance, requires no new consideration to support it." Again, in its reply brief appellant cites Cohen v. Commercial Travelers Mutual Accident Ass'n of America, Sup.Ct.1944, 47 N.Y.S.2d 402, 403, for the proposition that "any modification of [a contract] requires a new consideration to support it which must be pleaded and proved." The reply brief, however, fails to note that the New York court carefully pointed out that the contract then before it had been "entered into in the year 1933, prior to the amendment to Section 33 of the Personal Property Law". 47 N.Y.S.2d at Page 403. For these reasons, pursuant to the discretion vested in us by 28 U.S.C. § 1912,

we shall award double costs to the appellee herein.

A judgment will be entered affirming the judgment of the District Court, with double costs on this appeal to be recovered by the appellee.