**FLUORO ELECTRIC CORPORATION,**
Plaintiff-Appellee,

v.

**BRANFORD ASSOCIATES,**
Defendant-Appellant.

No. 306, Docket 73-1837.

United States Court of Appeals,
Second Circuit.

Submitted Sept. 19, 1973.

Decided Dec. 28, 1973.

Stuart Rodney Wolk, New York City, Albert M. Gross, New York City, of counsel, on the brief, for plaintiff-appellee.

Stolz, Goldfine & Stolz, New York City, on the brief, for defendant-appellant.

Before LUMBARD, HAYS and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

Branford Associates appeals from an order of the district court for the Southern District (Gurfein, J.) dated April 30, 1973, granting the plaintiff Fluoro Electric Corporation's motion under Rule 60, F.R.Civ.P., to substitute "Branford Associates" for "Branford Associates, a corporation," as the named defendant in this case.[1] We also consider

---

1. The plaintiff, in his motion, suggested that the motion could also be granted under Rule

15. The trial court found that Rule 15 was inappropriate for the relief sought and held

in connection therewith, and more particularly with relation to another appeal in this same case decided adversely to the appellant, a motion by the plaintiff-appellee under Rule 38, F.R.A.P., which asks damages and costs in the amount of $5098.70 for frivolousness in pressing the other appeal.[2] For the reasons hereinafter stated, we affirm the decision of the district court granting the plaintiff's motion under Rule 60, F.R.C.P., and we also grant its motion under Rule 38, F.R.A.P., for the full amount sought.

The plaintiff, Fluoro Electric Corporation, a New Jersey corporation, commenced this diversity suit on December 15, 1971, against "Branford Associates, a corporation." The complaint sought damages in the sum of $110,722.67 on two causes of action for alleged breach of contract, based on an agreement, entered into between the plaintiff and the party asserted to be the defendant, for the performance by the plaintiff, in company with Goldberg Electric, Inc., of electrical work in the construction of the Branford Shopping Center in Branford, Connecticut.

The answer to the complaint, filed on February 10, 1972, by the "Defendant, Branford Developers, Inc. (sued herein as Branford Associates)" raised three affirmative defenses and also asserted a counterclaim for $500,000. Motions for judgment dismissing the complaint on the basis of the asserted defenses and for judgment on the counterclaim were denied by Judge Gurfein and the case proceeded to trial before a jury. After a five-day trial the jury rendered a verdict on October 30, 1972, in favor of the plaintiff for $45,000. The judgment in that amount was entered on the next day against the defendant "Branford Associates, a corporation."

After entry of judgment, the party which had appeared at the trial as defendant filed a notice of appeal dated November 29, 1972, both from the judgment and from the trial court's denial of one of the motions to dismiss, that made for lack of an indispensable party (asserted to be Goldberg Electric, Inc.).

Prior to any appeal being heard, however, the plaintiff in January, 1973, sought to levy execution of the judgment through the United States marshal. The marshal's levy was against "Branford Associates, a Corporation, a/k/a Branford Developers, Inc.," and was part of a letter of demand against supposed assets of the defendant in the Security National Bank of New York. But the bank refused to transmit any sums, noting that it held an account in the name of "Branford Associates" (balance $20,381.32) and an account in the name of "Branford Developers, Inc." (balance $697.75). The bank stated it could hold the latter amount, but requested clarification of the judgment before releasing any funds in the Branford Associates account.

Informed of this impasse, the plaintiff in February, 1973, moved the trial court under Rule 60 for an order substituting

---

that Rule 60 was the applicable provision, either under Rule 60(a) or Rule 60(b)(1). The pertinent portions of Rule 60 provide:

(a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

. . .

(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud,* etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. . . .

2. Rule 38, F.R.A.P., provides:
*Damages for Delay*
If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

other named defendants as the true party or parties in interest, *nunc pro tunc*, listing the following: "Branford Associates," "Branford Developers, Inc.," "Branford Development Center, Inc.," and "Estate of Abner Rosenberg." This was the motion granted by the trial court on April 30, 1973, when it directed the clerk "to substitute 'Branford Associates' for 'Branford Associates, a corporation,'" and directed "the Marshal . . . to levy execution in accordance therewith." In the meantime, on February 20, 1973, this court had already dismissed the "defendant's" original ("first") appeal for lack of prosecution. (Second Circuit doc. no. 73–1138.)

Since the trial court's order of April 30th, "Branford Associates" has sought by various manoeuvres to reopen all or part of the prior proceedings. On May 16, 1973, it filed a notice of appeal from the April 30th order (the "second" appeal). (Second Circuit doc. no. 73–1837.) A day later, on May 17th, in an order to show cause in the district court, it moved for a stay of the levy of execution pending appeal. On June 5th, despite the February dismissal, it again filed a notice of appeal (dated May 31, 1973) from the original October 31st judgment (the "third" appeal), but this time under the name of "Branford Associates" only. (Also doc. no. 73–1837.) At the same time it also moved this court, by order to show cause dated May 30th, to stay the levy of execution pending the new appeal of the October 31st judgment "as amended April 30." The application for the stay was denied by this court. Two weeks later, it moved for an order extending time to transmit the record on appeal.

The plaintiff, in opposition, then moved this court, by order to show cause, (1) to dismiss the appeal dated May 31st (the third appeal) as frivolous, since it had already been dismissed in February *sub nom.* "Branford Associates, a corporation;" (2) for the awarding of damages under Rule 38, F. R.A.P.; and (3) for a denial of the "defendant's" motion for an extension of time to transmit the record. On June 26, 1973, in open court, we denied the appellant's motion for an extension of time, and we entered judgment dismissing the appeal dated May 31st. Our mandate on the dismissal issued July 17, 1973. We made no ruling with respect to the motion for damages. The second appeal from the order of April 30, 1973, was also still pending.

On July 24th, the plaintiff, as yet without satisfaction on the original judgment of the trial court, renewed his motion in this court for an award of costs and damages under Rule 38, now seeking specifically damages in the sum of 10% of the judgment (i. e. an additional $4500) and costs in the sum of $598.70. Branford Associates opposed the motion, arguing *inter alia* that the motion was premature because the second appeal remained to be heard and decided. (Branford Associates' other arguments in opposition to the motion are discussed later in this opinion.)

Agreeing that the remaining appeal should be considered first, we refrained from deciding the plaintiff's July 24th motion and awaited the filing of appellate briefs. These are now before us and we therefore proceed to the issue raised in what should be the final appeal in this case.

### I.

Branford Associates' contention on appeal, and the one which it has adhered to since April 30th, is that it was error for the trial court to have granted the plaintiff's motion under Rule 60 for the correction of a misnamed party defendant. It claims that the plaintiff sought to sue, and did sue, a corporate defendant; that this defendant (misnamed "Branford Associates, a corporation," by the plaintiff) appeared in the action by its proper name, "Branford Developers, Inc."; that the jury's verdict ran solely against that corporate defendant, however named; and that Rule 60 cannot be utilized thereafter, under the guise of correcting a misnomer, to substitute a new party defendant, a

partnership, which was never a party to the contract in controversy with Fluoro Electric, which never was served in the action, and which never had its day in court. In short, Branford Associates contends it was "brought into the action," improperly, on April 30, 1973, as a result of the plaintiff's discovery of the small assets of Branford Developers, Inc., and that any prior determinations of the plaintiff's rights, or of the defendant corporation's liabilities, are not binding as to it.

The plaintiff's position is that it brought suit against the other party to the contract, regardless of its legal structure, corporate or partnership; that the party was in substance the same organization of individuals, regardless of name; that these individuals should not be permitted to escape payment of a lawful judgment through legal obfuscations of their own making; and that therefore the trial court's granting of the Rule 60 motion was proper.

When these contentions were first joined in the hearing on the April 30th motion, the trial court agreed with the plaintiff, finding that the "other contracting party was, in fact, Branford Associates, the partnership." The court explained further:

> The failure of the "defendant" to speak up in the circumstances was "misconduct of an adverse party." Rule 60(b)(3). The close relationship between the entity which was the object of suit makes this a proper correction of a "misnomer" rather than the substitution of a party.

In Branford Associates' view, however, no misconduct should be attributed to it, since it claims never to have been before the court. "If Branford Associates, the partnership," so it contends, "had originally been named in the summons and complaint in this action, it would not have admitted that it was the other party to the contract," as supposedly Branford Developers, Inc., did.

After a careful review of the record, we believe that the trial court was am-ply justified in granting the plaintiff's motion, that the party now before us as "Branford Associates" was the party defendant at trial, and that since then it has only persisted in technical manoeuvres by which it might avoid a lawful judgment rendered against it.

To begin with, "Branford Associates, a corporation," never existed. There was, at all times relevant, as the parties concede, a "Branford Associates," a partnership. One of the partners of Branford Associates is Morton J. Rosenberg, who was personally served in the original suit. He is the son of Abner Rosenberg, the deceased founder of Branford Associates. Abner Rosenberg was also the founder of Branford Developers, Inc., a Connecticut corporation whose principal place of business is in New York. Morton Rosenberg is vice president and, since the death of his father, principal officer of Branford Developers, Inc. He has been the principal defense witness in all phases of this case. Moreover the attorneys for the company and for the partnership are one and the same, and have been throughout.

The original contract of June 1, 1970, was stated to be between "Branford Associates, 22 East 42nd St., N.Y., N.Y., 10017, the Contractor," and "Fluoro Electric Co., 573 Ferry St., Newark, N. J., the Subcontractor." It was signed by Irving Blum for the latter, and for the "Contractor" it was signed as follows:

> Branford Shopping Center
> Developers, Inc. and
> Abner Rosenberg
> by /s/ *Abner Rosenberg*
> Abner Rosenberg
> by /s/ *Abner Rosenberg*
> Abner Rosenberg

The words "Shopping Center Developers, Inc." had been written in over the crossed out word "Associates." There was no such entity as "Branford Shopping Center Developers, Inc."

Thereafter, whatever initial confusion existed was compounded. During the

troubled construction of the Branford Shopping Center, Fluoro Electric's invoices were consistently addressed to "Branford Associates." These were accepted, but payment was customarily made by check of "Branford Developers, Inc.," over the signature of Morton J. Rosenberg. However, when the contractor communicated with the plaintiff by mail and by telegram, as it frequently did, it did so in the name of "Branford Associates" or of Morton J. Rosenberg for "Branford Associates."

Later, during trial, the confusion persisted. The defendant's answer to the complaint has been noted: "Branford Developers, Inc. (sued herein as Branford Associates)." The appellant asserts this put the plaintiff on clear notice that the defendant was the corporate entity.[3] However, this was far from clear. The individuals representing the defendant at trial, whether officer, partner, or attorney, never moved to correct any misapprehensions on the part of the court, even though several opportunities were presented. Thus at one point the court asked Morton Rosenberg:

> Q. Were you familiar with the contract that was entered into between Branford Associates and Fluoro Electric Company?
>
> A. Yes I was.
>
> Q. Had you ever seen that contract?
>
> A. Yes.

Similarly, when the court charged the jury to the effect that the defendant was "Branford Associates, Inc.," no objection or request for modification was raised by the defense. In fact, it appears that there was never any objection in open court, or during the pretrial stages, to the repeated use of the phrase "Branford Associates" or "Branford Associates, Inc." in references to the defendant by the court and by the plaintiff.

It is only in retrospect, therefore, that the appellant now attempts to claim that it and Branford Developers, Inc., are really two separate entities. Prior to the plaintiff's motion granted on April 30th, that distinction was blurred beyond recognition, a situation permitted if not actively encouraged by the individuals who ran and represented both "defendant" organizations.[4] To the plaintiff, to the trial judge, and to the jury it was plain that only one group of men had contracted with the plaintiff, a group known as Branford Associates. That this group was styled a corporation in the complaint and thereafter occasionally so referred to did not mean that the party sought to be charged by the plaintiff was a corporate defendant, regardless of name. On the contrary, under the circumstances, it is clear that it was Branford Associates which the plaintiff sought to hold liable, regardless of its legal status.

There was, therefore, no error in Judge Gurfein directing the clerk to de-

---

3. Branford Associates also relies on the deposition of Morton Rosenberg taken by the plaintiff's attorneys on May 2, 1972, in which the following occurred:
Examination by Mr. Gross [plaintiff's attorney]:
* * * * *
Q. Mr. Rosenberg, what position do you hold in the Defendant corporation?
A. I am an officer of the company.
Q. What position?
A. Vice-President Branford Developers, Inc.
Q. Branford Developers Inc., that is the name of the Defendant?
A. That is correct.
This exchange was not part of the evidence at trial, however. There, when a similar exchange of questions and answers took place, the following occurred:
[The Court.] Are you connected with the Branford Associates?
[Mr. Rosenberg.] Yes, I am.
Q. In what capacity?
A. I am an officer of the defendant.
Q. What office do you hold?
A. Vice President of the defendant.

4. The distinction was previously suggested in the appellant's affidavit in reply to the plaintiff's motion for dismissal of the first appeal, which we granted on February 20, 1973, but it was not clarified in the proceedings held on that motion.

lete the words "a corporation" from the defendant's name in the judgment. Had this been corrected earlier, no other persons would have been served in the action. No others would have appeared before the court. It was properly the correction of a misnomer under Rule 60(a). See Anderson v. Brady, 6 F.R.D. 587 (E.D., Ky., 1947).

The order of the district court, granting the plaintiff's motion under Rule 60 to substitute "Branford Associates" for "Branford Associates, a corporation," as the named defendant in the action, is accordingly affirmed.

## II.

We turn now to the plaintiff's motion of July 24th under Rule 38, F.R.A.P., for the awarding of damages and costs in relation to the defendant's third appeal, previously dismissed by this court as frivolous on June 26, 1973.

Appellant Branford Associates opposes this motion on two grounds in addition to its objection, already discussed, on the basis of prematurity. The two additional grounds are: (1) that this court's silence on June 26th on the motion for damages made by the plaintiff at that time was equivalent to a denial of the motion, with the consequence that the relief cannot be sought again; and (2) that an awarding of costs is not permissible in the light of Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). We find the appellant's contentions without merit.

■ Our prior silence on the issue of damages and costs under Rule 38 is by no means a determination of that issue, and the plaintiff-appellee is in no way precluded from continuing to seek such relief until we have positively addressed the matter. See Rules of the Second Circuit, Supplementing the Federal Rules of Appellate Procedure, sec. 27. Nor does the *Fleischmann* case limit our discretionary power under Rule 38. *Fleischmann* was a case of deliberate trademark infringement and dealt solely

with the awarding of costs under the Lanham Act, 15 U.S.C. secs. 1051–1127. It has no relevance here.

The critical question is rather whether the situation here is one of those "highly unusual" instances which permit the imposition of sanctions under Rule 38 because of "a clear showing of bad faith." West Virginia v. Pfizer, 440 F. 2d 1079, 1092 (2nd Cir.), cert. den. 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). We hold that it is.

■ Rule 38 is not premised on a showing of delay in prosecuting an appeal (Advisory Committee's Note to Rule 38; 9 Moore, Federal Practice 4251), although for a simple breach of contract case there has been inordinate delay here in satisfying the judgment. Rather the determination is one of doing justice between the parties, of penalizing a party for unnecessarily wasting the time and resources of the court. NLRB v. Smith & Wesson, 424 F.2d 1072 (1st Cir., 1970).

■ Here the defendant has prosecuted three appeals to this court, in addition to the numerous post-trial motions it has filed here and in the district court. In none of these appeals was there a pretense to any ground for appeal other than the claim that the judgment was against the wrong entity. Such an appeal was particularly unjustified in the case of the third appeal, in relation to which these damages are specifically sought. Rule 38 was designed to penalize litigants for just such tactics as these and to compensate those who have been put to the expense of answering such wholly frivolous appeals. NLRB v. Smith & Wesson, *supra*; Oscar Gruss & Son v. Lumbermens Mutual Casualty Co., 422 F.2d 1278 (2nd Cir., 1970); Griffin Wellpoint Corp. v. Munro-Langstroth, Inc., 269 F.2d 64 (1st Cir., 1959).

Pursuant to Rule 38, Federal Rules of Appellate Procedure, the plaintiff-appellee is awarded damages in the sum of $4500 and costs in the sum of $598.70.