MESKILL, Circuit Judge:
Cosmopolitan Aviation Corporation (Cosmopolitan) and Flushing Savings Bank (Flushing) appeal from an order entered in the United States District Court for the Eastern District of New York, Mishler, J., which affirmed an order of the United States Bankruptcy Court for the Eastern District of New York, Párente, J., directing Cosmopolitan to turn over possession of certain premises at Republic Airport in Farmingdale, New York to the New York State Department of Transportation (State). The State appeals from an order entered in the United States District Court for the Eastern District of New York, Altimari, /., which extended the time, pursuant to Fed.R.App.P. 4(a)(5), for Flushing to file a notice of appeal from Judge Mishler’s order.
We hold that Cosmopolitan is without standing to appeal the bankruptcy court order. We also hold that the trial judge abused his discretion in granting Flushing an extension and, therefore, that Flushing failed to file a timely notice of appeal. *509 Accordingly, we reverse the order granting Flushing an extension and we dismiss this appeal as to both Cosmopolitan and Flushing. Furthermore, the frivolous and vexatious character of the appeal brought by Cosmopolitan and Flushing warrants the imposition of sanctions in the form of double costs and attorneys’ fees against them as well as against their attorneys. We intend the award of fees in favor of the State to be in the nature of compensatory damages. Therefore, we remand this action to the district court and instruct that court to ascertain the amount of the State’s reasonable attorneys’ fees and to assess that amount jointly and severally against Flushing and its attorneys and jointly and severally against Cosmopolitan and its attorneys to compensate the State for the cost of defending against this action in the federal courts.
Background
This ease began as a simple dispute between the State as landlord, and its tenant, Cosmopolitan.[1] It has, however, been inordinately complicated by the combined machinations of Cosmopolitan and Flushing. The dispute and the legal issues raised do not warrant the space necessary to convey adequately the truly remarkable bad faith evidenced by Cosmopolitan and Flushing throughout this litigation. During the course of these proceedings, Cosmopolitan, Flushing and their attorneys have continually mischaracterized facts, prior proceedings and the law. It has been no mean task to pick through the voluminous record only to find that the State’s presentation has been essentially and consistently unbiased and balanced, in complete contrast to the actions of Cosmopolitan and Flushing.
In October 1975, Cosmopolitan entered into a lease under which it took possession of approximately forty acres at Republic Airport, a general aviation facility in Farmingdale owned by the State. The lease was for a term of fifteen years, from October 1975 to October 1990, with an option to renew for ten years. In addition to requiring monthly payment of a base rent and a percentage of revenue, the lease obligated Cosmopolitan, inter alia, to construct a hangar within a specified time limit and in accordance with plans approved in advance by the State, to request and receive written approval prior to conducting air taxi or charter operations, to keep and maintain accurate books and records of its operations at the airport and to make those books and records as well as certified financial statements, external audits and income tax returns available to the State.
The lease also provided that if Cosmopolitan were to continue in default of any or all of its obligations for thirty days after written notice of default from the lessor, the State could terminate the agreement on five days written notice. In the event of such termination, the lessor was obligated to pay to Cosmopolitan, after deducting all amounts due to the State as lessor, an amount equal to the cost of improvements made by the lessee in accordance with the terms and conditions of the lease (the buyback provision).
In or about September 1976, the State consented in writing to Cosmopolitan’s mortgage and assignment of its interest in the lease to Flushing. The consent outlined the conditions Flushing would have to satisfy before it would be entitled to take possession of the premises: it would have to cure any defaults; it would have to do so within the period permitted under the lease, i.e., within thirty days following notice of default, and it would have to obtain the consent of the State which would not unreasonably be withheld.
In late 1977 and 1978, Cosmopolitan defaulted on all of its previously listed obligations. Attempts at informal resolution having proved unavailing, the State served *510 on Cosmopolitan, with a copy to Flushing, a notice of default dated June 11, 1979. The defaults remained uncured. Flushing took no timely action to satisfy any of the conditions required before it could take possession of the premises. In August 1979, the State notified Cosmopolitan in writing, with a copy to Flushing, that the lease would terminate on September 5, 1979 and that Cosmopolitan should surrender the premises on that date. Cosmopolitan refused to comply. Consequently, the State instituted a summary proceeding in the state District Court of the County of Suffolk, Second District to recover possession. The State did not notify Flushing of the suit.
Trial began in June 1981 and progressed slowly and sporadically. Nine trial days later, in August 1981, Cosmopolitan began its defense case. On August 11, 1981, Cosmopolitan filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of New York, which automatically stayed the state court litigation. The State moved successfully in the bankruptcy court to vacate the stay. The bankruptcy court order, however, also prohibited the State from enforcing any favorable state court judgment absent a further order from the bankruptcy court. The state court trial resumed, progressing even more slowly than before. Post-trial briefs were finally submitted in late April 1982.
Although never formally notified, Flushing had been aware of the State’s summary dispossess proceedings since at least December 1981. Flushing sought no involvement of any kind, however, until March 1982. At that time it sued the State for declaratory and monetary relief pursuant to the buy-back provision of Cosmopolitan’s lease. At no time during this critical period did Flushing assert a right to possession of the premises either in this action or in the underlying possession proceeding. The State removed Flushing’s action to the bankruptcy court where the suit has remained dormant.
The state trial court handed down its decision in the summary proceeding in May 1982. Finding that Cosmopolitan had failed to cure eight material defaults under the lease — only one of which related to nonpayment of rent — the court held that the lease had terminated on September 5, 1979 and that Cosmopolitan had thereafter wrongfully remained in possession. Final judgment was entered on June 2, 1982 adjudging the State to be entitled to possession, ordering the issuance of a warrant of eviction against Cosmopolitan, its personnel and affiliates and awarding the State $176,426.44 but not precluding it from seeking any additional amounts later found to be owing.
Armed with its unequivocal state court judgment, the State returned to the bankruptcy court on June 3, 1982 seeking to have Cosmopolitan liquidated, to have the proceeding converted from a Chapter 11 to a Chapter 7 action and to have a trustee appointed to oversee the liquidation, to conduct an audit and to restore possession to the State. By order dated June 24, the bankruptcy court appointed an operating trustee but, on Flushing’s request, refused to convert the action. Flushing informed the court that it was engaged in negotiating a potential refinancing deal with Cosmopolitan.
On or about June 12, 1982, with the trustee’s approval, Cosmopolitan appealed the trial court decision to the New York Supreme Court, Appellate Term. While aware of the appeal, Flushing did not attempt to intervene during the ten month period of the appeal’s pendency.
In November 1982, the bankruptcy court sua sponte issued an order to show cause why it should not convert the Chapter 11 proceeding to a Chapter 7 proceeding or dismiss pursuant to 11 U.S.C. § 1112(b) (1982). At the January 25, 1983 hearing, Cosmopolitan and the trustee argued that the bankruptcy court should not act until the appellate term decided Cosmopolitan’s appeal. The bankruptcy court acquiesced but also ordered that a rehabilitation or liquidation plan be filed by March 1, 1983. The court acknowledged that the lease, if reinstated, would constitute a valuable asset. But it was becoming increasingly evi *511 dent that even with the lease, Cosmopolitan would be in very dire financial straits.
In April 1983, the appellate term affirmed the trial court judgment and Cosmopolitan appealed to the New York Supreme Court, Appellate Division. In early November 1983, the trustee informed the bankruptcy court that Cosmopolitan was unable to meet its current operating expenses, incapable of settling its pre-petition obligations and incapable of curing its defaults — even if the lease was resurrected. A full evidentiary hearing was held in the bankruptcy court on December 12, 1983, approximately two and one-half years after Cosmopolitan filed its petition and a year and one-half after the State filed its initial motion to convert. Flushing participated, appearing through one of its attorneys, and urged the court to again forestall action and to await the imminent decision of the appellate division, hinting that Flushing might be interested in putting together a plan with Cosmopolitan if the lease was reinstated.
It became clear at the December 12 hearing, if indeed it had not been before, that Cosmopolitan had failed to seriously attempt to rehabilitate, despite a time frame that had been extended well beyond the norm. Moreover, it was obvious that, even given the opportunity, Cosmopolitan could not cure its lease defaults. Furthermore, testimony revealed a veritable web of closely related corporations as well as some plainly suspicious corporate shuffling, including the transfer of certain operations to a newly created Delaware corporation owned and controlled by Peter Garrambone, who with George Garrambone owned and controlled Cosmopolitan and its affiliates. Evasive testimony and oblique legal arguments combined to imbue the transcript with a palpable aura of bad faith.
From the bench at the close of argument in the bankruptcy court, the court ordered that Cosmopolitan be continued as a Chapter 11 debtor, that operations cease the following day, December 13, and that the trustee take all steps necessary to liquidate the company and to marshal the assets. Considerations of time and money dictated the court’s decision not to convert the proceeding to a Chapter 7. Conversion, which would have required the appointment of a new trustee, would have produced further delays and would have placed an additional drain on the estate’s remaining assets.
The judge’s written order, filed December 22, 1983, reiterated the state court holding that the lease had expired on September 5, 1979 and stated that, in any event, Cosmopolitan could not cure its substantial defaults and was not reasonably likely to rehabilitate. The court ordered the estate continued for the sole purpose of liquidating its assets and not for the purpose of continuing the debtor as an operating entity. It ordered that Cosmopolitan’s business operations should cease on December 13.
The bankruptcy court’s December 1983 order was never appealed. In fact it seems to have been completely ignored. When we heard oral argument in this case on January 23, 1985, Cosmopolitan was still operating at Republic Airport.
The trustee exhibited no discernible inclination to liquidate Cosmopolitan. In late February 1984, the State applied for an order to compel the trustee to at least halt Cosmopolitan’s commercial flight operations. At about the same time, the appellate division affirmed the judgment holding that the lease had expired. At the suggestion of the bankruptcy court, the State moved to completely vacate the modified stay and obtain possession. Because the motion addressed only the State’s right to possession, Flushing was not served. Flushing’s attorney concedes, however, that Flushing had actual notice.
At the hearing on March 15, the court expressed its displeasure with the trustee’s performance, characterized the entire proceeding as an abuse of process and made clear its intention to finally end the litigation. By an unfortunate twist of fate, the court signed Cosmopolitan’s rather than the State’s proposed order, vacating the stay but sending the parties back to litigate in the state courts.
*512 The State applied for resettlement, urging the court to order the trustee to surrender the premises directly to the State. Describing the action as “tantamount to excessive, vexatious litigation,” J.App. at 169, the bankruptcy court granted the State’s application and, by order dated April 10, 1984, directed that possession of the premises be turned over to the State no later than April 20, 1984. The court refused to stay its order pending appeal. Flushing had actual notice of the court’s determination prior to final entry of the order but it entered no objection.
Cosmopolitan alone filed a notice of appeal from the April 10 order. Purporting to represent the interests of the trustee and Flushing as well as its own, Cosmopolitan sought a stay on the ground that it was seeking to appeal the state court decision to the New York Court of Appeals. Expressing grave misgivings as to Cosmopolitan’s standing to appeal and a strong suspicion of bad faith, Judge Mishler, by order dated April 16,1984, stayed the bankruptcy court order. Judge Mishler’s order was specifically conditioned on the deposit of $100,000 on behalf of Cosmopolitan to cover post-petition rent due as well as any damages, costs and attorneys’ fees that might later be “assessed against Cosmopolitan and its attorneys pursuant to 28 U.S.C. § 1927 upon a determination that Cosmopolitan has engaged in dilatory or vexatious litigation in this matter.” J.App. at 537-38.
On April 27, the State asked the district court to modify its order to halt the flight operations of Cosmopolitan and its affiliated companies. Reiterating its doubts about Cosmopolitan’s standing, the court again expressed its uneasiness with the proceedings generally, noting that the action appeared to be a misuse of the bankruptcy court. Standing by its decision to maintain the status quo, however, the district court refused to halt the unauthorized flights. The court concluded that the State had failed to show either irreparable harm or that the balance of hardships tipped in its direction. We affirmed the May 23, 1984 ruling by unpublished order. In re Cosmopolitan Aviation Corp., 751 F.2d 368 (2d Cir.1984). Meanwhile, on May 16, the appellate division had granted Cosmopolitan leave to appeal to the New York Court of Appeals.
Several months earlier, Flushing had begun a somewhat curious and certainly belated campaign to collaterally attack the bankruptcy court’s liquidation order. In December 1983, Flushing moved in the appellate division to intervene in Cosmopolitan’s appeal claiming that as an interested party its rights could be adversely affected by the June 1982 state district court judgment. The appellate division denied Flushing’s application. In March 1984, Flushing moved to intervene in the state district court to set aside the June 1982 judgment. That application was denied in May 1984. Flushing appealed to the appellate term and that appeal is apparently still pending. Flushing then moved to intervene before the New York Court of Appeals where Cosmopolitan’s appeal was awaiting decision. In July 1984, that application was also denied.
In November 1984, the New York Court of Appeals affirmed the June 1982 judgment of the state district court. By order to show cause, the State requested vacatur of the federal district court’s April 16 stay. When Flushing and Cosmopolitan appeared before the district court on December 7, 1984, Flushing for the first time claimed a right to possession of the premises and alleged that its appeal then pending before the appellate term could ultimately result in a reversal of the June 1982 decision and the revival of the lease. Unconvinced, Judge Mishler by order dated that same day affirmed the April 10 order of the bankruptcy court, dismissed Cosmopolitan’s appeal and ordered Cosmopolitan and all other parties claiming a right to possession to turn over possession on or before December 14, 1984.
Cosmopolitan filed its notice of appeal of Judge Mishler’s order on December 12, 1984. It also moved to stay enforcement of the district court order pending appeal. *513 Flushing did not at that time file a notice of appeal. It did, however, file a motion to intervene in the district court which Judge Altimari granted on December 14. Both Cosmopolitan and Flushing appeared before us to argue for a stay. We, mistakenly as it turns out, granted a stay on December 20, 1984 and expedited the appeal.
On January 18, 1985, Flushing filed a notice of appeal of Judge Mishler’s December 7 order. It also filed a motion seeking an extension of time in which to file a notice of appeal pursuant to Fed.R.App.P. 4(a)(5). Judge Altimari granted the motion and the State immediately appealed. That appeal was also expedited and consolidated with Cosmopolitan and Flushing’s appeal.
We heard argument on January 23. Relying completely on Flushing, Cosmopolitan neither submitted a separate brief nor favored us with an oral presentation. Indeed, counsel for Cosmopolitan was totally unprepared to respond to our questions. At the close of argument, we vacated our previous stay of the December 7 district court order. We also directed the parties to file supplemental briefs addressing both the extent of our power to award sanctions against Cosmopolitan, Flushing and their attorneys for bad faith litigation and the best method for calculating the amount.
Discussion
For the reasons articulated below, we dismiss Cosmopolitan’s appeal for lack of standing and we dismiss Flushing’s appeal for failure to file a timely notice of appeal. Having determined that we lack jurisdiction to decide the merits of this case, we address them solely to explain why we believe that sanctions against Cosmopolitan, Flushing and their attorneys are appropriate. See Hastings v. Maine-Endwell Central School District, 676 F.2d 893, 897-98 (2d Cir.1982).
A. Cosmopolitan’s Lack of Standing
The Bankruptcy Code of 1978, 11 U.S.C. § 101 et seq. (1982 & Supp. I 1983), does not contain an explicit limitation on appellate standing. Thus, relying on preCode law, a number of courts have adopted a standard that requires an appellant to show that he is a “person aggrieved,” that he is “directly and adversely affected pecuniarily by” the challenged order of the bankruptcy court. In re Fondiller, 707 F.2d 441, 442, 443 (9th Cir.1983); In re Goodwin’s Discount Furniture, 16 B.R. 885, 888-89 (Bkrtcy.App. 1st Cir.1982); In re Jewel Terrace Corp., 10 B.R. 1008, 1011 n. 3 (E.D.N.Y.1981); see also 1 Collier on Bankruptcy H 3.03[5] at 3-118 to -119 (15th ed. 1985). We believe that this rule sets a reasonable and practical threshold for standing and we join the courts that have adopted it.
Under this rule, Cosmopolitan clearly lacks standing to appeal the December 7 order of the district court affirming the April 10 order of the bankruptcy court which directed the liquidating trustee to turn over possession to the State. The impact on Cosmopolitan of the order appealed from must be evaluated in light of the December 1983 bankruptcy court order. The latter order, which was never appealed, in essence stated that the outcome of Cosmopolitan’s state court appeals was immaterial given Cosmopolitan’s dismal economic position. According to the bankruptcy court’s unchallenged reasoning, even if some state appellate court ruled in Cosmopolitan’s favor, Cosmopolitan’s position would not be improved because the corporation could not cure its defaults. Further, the court found, and no one may now dispute, that Cosmopolitan was hopelessly insolvent with no likelihood of rehabilitation. Cosmopolitan’s continued existence and operation was in complete derogation of the bankruptcy court’s liquidation order.
We must also consider the New York Court of Appeals’ November 1984 affirmance of the judgment which held that the lease had expired in September 1979. In light of the foregoing, Cosmopolitan has not shown, indeed could not show, that it had any right of possession as of April 1984. Therefore, Cosmopolitan was not directly and adversely affected pecuniarily by the April 10 bankruptcy court order or *514 by the December 7 district court order. Accordingly, we dismiss Cosmopolitan’s appeal for lack of standing.
B. Flushing’s Failure to File a Timely Notice of Appeal
Under Fed.R.App.P. 4(a)(1), a notice of appeal in a civil case, except where the United States is a party, must be filed within thirty days after entry of the judgment or order from which appeal is taken. This time limit is “mandatory and jurisdictional.” Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982); Browder v. Director, Department of Corrections of Illinois, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960); Stirling v. Chemical Bank, 511 F.2d 1030, 1031 (2d Cir.1975); see also Guido v. Ball, 367 F.2d 882, 882-83 (2d Cir.1966). This limitation is applicable to appeals involving bankruptcy orders. Fed.R.App.P. 4 advisory committee notes; 9 Moore’s Federal Practice H 204.08[2] at 4-32 (2d ed. 1985). The rule is not as draconian as it first appears: “The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a).” Fed.R.App.P. 4(a)(5).
The good cause standard applies to requests for extensions filed prior to the expiration of the initial thirty days. To procure an extension after those first thirty days, the movant must show excusable neglect. Fed.R.App.P. 4 advisory committee notes; 9 Moore’s Federal Practice 11204.13[1.-1] at 4-89. The excusable neglect standard was intended to be a strict one, and to meet it, the moving party must show unique and compelling circumstances. Fase v. Seafarers Welfare & Pension Plan, 574 F.2d 72, 76 (2d Cir.1978). Mindful of the purpose of the rules of appellate procedure “to bring litigation to an end and to discourage dilatory tactics,” In re Orbitec Corp., 520 F.2d 358, 362 (2d Cir.1975), courts should find excusable neglect only in the most extraordinary and unusual situations. State of Oregon v. Champion International Corp., 680 F.2d 1300, 1301 (9th Cir.1982); Airline Pilots v. Executive Airlines, 569 F.2d 1174, 1175 (1st Cir.1978).
As a general rule, we accord great deference to a district court’s finding of excusable neglect. Fase, 574 F.2d at 77. We will overturn an extension granted under Rule 4(a)(5) only for abuse of discretion. Chipser v. Kohlmeyer & Co., 600 F.2d 1061, 1063 (5th Cir.1979); In re Estate of Butler’s Tire & Battery Co., 592 F.2d 1028, 1032 (9th Cir.1979); Gooch v. Skelly Oil Co., 493 F.2d 366, 368 (10th Cir.), cert. denied, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 277 (1974); see also Mennen Co. v. Gillette Co., 719 F.2d 568, 571 (2d Cir.1983).
The excusable neglect standard will generally be satisfied where a party acting in good faith was entitled to and did rely on actions of the district court or its officers and consequently misses the Rule 4 deadline. E.g., Mennen Co., 719 F.2d at 571. Similarly, given the appropriate circumstances, failure to hear that judgment has entered may be the basis for a finding of excusable neglect, as may uncontrollable delays in mail delivery, unpredictable events affecting the feasibility of appeal and plausible misconstructions but not mere ignorance of the law or rules. 9 Moore’s Federal Practice H 204.13[l.-3] at 4-94 to -97.
In support of its request for an extension, Flushing presented two arguments to the district court. First, Flushing’s attorney claimed that he believed that United States District Judge Altimari’s December 14 order, permitting Flushing to intervene, constituted leave to intervene in Cosmopolitan’s appeal which was already before us. Thus, he claimed, he thought it was unnecessary for Flushing to file a separate notice of appeal. He further informs us that it would be inequitable for us to dismiss Flushing as an appellant because he, his associates and Flushing have devoted so much time to this appeal. Second, Flush *515 ing argued that it should be entitled to fourteen additional days under Rule 4(a)(3) because Cosmopolitan filed a notice of appeal.
Not surprisingly, Flushing was unable to support these arguments. We find it implausible that experienced counsel could actually believe that the district court has authority to allow a person to intervene in an appeal pending before the court of appeals. Neither can we accept that experienced trial counsel did not realize that every appellant must file its own notice of appeal.
Flushing’s second argument is tantamount to a direct affront. The language of Rule 4(a)(3) could hardly be more clear:
If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.
The fourteen day period following the date on which Cosmopolitan filed its notice of appeal ended on December 26, 1984. The thirty day period following entry of the order appealed from ended on January 7, 1985. Flushing filed its notice of appeal on January 18.
The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules. Flushing did not establish excusable neglect. Thus there was no basis on which the district court could grant an extension pursuant to Rule 4. The order granting Flushing an extension is reversed for abuse of discretion.[2] Consequently, Flushing has not filed a timely notice of appeal and we are, therefore, without jurisdiction to decide the merits of its appeal. We must dismiss.
C. The Merits
We reemphasize that our sole reason for discussing the merits — or lack thereof — is to make clear the underpinning of our decision to award sanctions. Our foray is accordingly brief.
We note at the outset that our December 20 stay in no way should be considered a justification for Cosmopolitan and Flushing’s continued prosecution of this appeal. We believe that an objective review of the record reasonably and unequivocally suggests that the stay would not have been granted had Cosmopolitan and particularly Flushing not completely obfuscated the factual and legal issues. The unnecessary complexity created by Flushing, Cosmopolitan and their attorneys, augmented by mischaracterizations and omissions, misled the panel that granted the stay. We will not permit the wrongdoers to profit from their contemptible conduct. The December 20 stay cannot buffer them from the consequences of their bad faith.
As previously noted, all of the arguments on appeal were advanced by Flushing; Cosmopolitan simply joined with Flushing. The first claim, which actually also underlies the remaining arguments, is that Flushing has a right of possession in the premises. Flushing maintains that some state court may yet allow it to intervene in the state court proceeding against Cosmopolitan and that the state courts might then overturn the now venerable ruling, affirmed by the New York Court of Appeals, that the lease expired on September 5, 1979. Flushing’s right, as a secured creditor, to participate in a holdover proceeding for possession is dubious at best — even if one ignores Flushing’s utter lack of response to the notice of default. Nevertheless, if allowed to intervene, Flushing alleges, it will be able to exercise its right of redemption under New York law, cure the lease defaults and assume possession of the premises or sell the lease. Disregard *516 ing for the sake of discussion the mindboggling odds against the lease being reinstated, we note that Flushing has neither a right of redemption nor — unless it has a time machine — the ability to cure the lease defaults.
Under the mortgage and assignment between Cosmopolitan and Flushing, Flushing was entitled to possession only on satisfaction of certain conditions. After receiving a copy of the notice of default, Flushing gave no indication to the State that it had any interest in curing Cosmopolitan’s defaults. Any inchoate right to possession which Flushing may once have had has long since expired.
The state right of redemption to which Flushing alludes is not available under the circumstances of this case. Flushing concedes that the right alleged, which derives from N.Y. Real Prop. Acts. Law § 751 (McKinney 1979), belongs to Cosmopolitan, not to Flushing, and arises by its terms only in summary proceedings for nonpayment of rent. Flushing’s characterization of the State’s summary proceeding as “in essence a nonpayment proceeding,” Br. of Intervenor-Appellant at 21, is pure fabrication. Of the eight material defaults which the trial court identified, only one concerned nonpayment of rent.
Moreover, section 751 explicitly applies only before a warrant is issued. Flushing attempts to circumvent this limitation by arguing that the issuance of the warrant violated the August 21, 1981 bankruptcy court order and, therefore, was invalid. Even if Flushing had raised this argument below, instead of for the first time in this appeal, the argument would be unavailing. Under N.Y. Real Prop. Acts. Law § 749, the state court was required to issue the warrant at the time it issued final judgment for the State. Further, the August 21, 1981 order of the bankruptcy court merely precluded the State from actually executing on a favorable judgment without the approval of the bankruptcy court. The State and the state court were in compliance with the August 21 order. Cosmopolitan’s repeated, bold defiance of court orders lends a certain irony to Flushing’s argument. Flushing’s redemption claim is completely frivolous.
Flushing’s second major theme posits that the bankruptcy court abused its discretion in ordering Cosmopolitan to turn over possession to the State. This argument rests on alternative grounds. First, Flushing claims that the bankruptcy court could not issue the order pursuant to 11 U.S.C. § 105(a) (1982) because 28 U.S.C. § 1481 (1982), omitted by Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 113, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 343, prohibits the bankruptcy court from enjoining another court. The State aptly described this argument as bizarre. The April 10 order does not purport by its terms to enjoin any court. And Flushing has failed to show that the effect, nonetheless, is injunctive. Second, Flushing cites case law to support the proposition that an order awarding possession of leased premises to the landlord should only be granted pursuant to 11 U.S.C. § 105(a) under the most extraordinary and compelling circumstances. We have no trouble accepting this proposition for the sake of argument. But we fail to see how it aids Flushing’s cause. By the time the April 10 order was filed, the New York courts at every level had agreed that the lease expired on September 7, 1979; Cosmopolitan had been ordered liquidated and adjudged incapable of rehabilitation and of curing its defaults; Flushing had been aware of or involved in the proceedings at all stages, beginning with the State’s notice of default; Cosmopolitan had refused to cease operations or, indeed, to comply with any of the orders issued by the courts and the bankruptcy court had expressed its belief that the entire proceeding constituted an abuse of process. These circumstances certainly appear to us to be extraordinary and compelling.
Flushing’s final argument[3] is that it has been deprived of an interest in real proper *517 ty. Specifically, Flushing claims that the bankruptcy court violated its due process rights because Flushing was not made a party to the motion which led to the April 10 order. We note first that Flushing has been unable to convince any court so far that it has a possessory interest in the premises. Flushing is still batting zero. At most, and we do not decide this question, Flushing could be entitled to a monetary settlement under the buy-back provision of the expired lease. This right, assuming it exists, is in no way diminished by the April 10 order. Moreover, Flushing had actual notice of and participated in the relevant bankruptcy and district court proceedings. Based on fabrication and fantasy, Flushing’s due process arguments evaporate when exposed to the light of reason.
D. Sanctions
Our power to award sanctions in this case derives from several sources. Fed.R.App.P. 38 permits us in our discretion to award damages and double costs for the prosecution of a frivolous appeal. The advisory committee note to the rule explains that damages in such a case should be awarded “as a matter of justice to the appellee and as a penalty against appellant.” Similarly, 28 U.S.C. § 1912 (1982) gives us the discretion to award to a prevailing party damages for delay and double costs. Under 28 U.S.C. § 1927 (1982), “[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys’ fees reasonably incurred because of such conduct.” Finally, where a losing litigant has acted vexatiously or in bad faith, it is within our inherent powers to award attorneys’ fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). And if we find willful abuse of process, we may exercise our inherent power to assess attorneys’ fees against counsel. Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).
The appeal brought by Cosmopolitan and Flushing is entirely frivolous. It can only have been brought for the purpose of delay. Cosmopolitan, Flushing and their attorneys have acted vexatiously and in bad faith. The attorneys representing Cosmopolitan and Flushing have unreasonably multiplied the proceedings in this case and are guilty of willful abuse of process. The parties and their attorneys should be penalized for unnecessarily wasting our time and resources and the State should be compensated for having been put to the expense of answering these wholly frivolous appeals. Fluoro Electric Corp. v. Branford Associates, 489 F.2d 320, 326 (2d Cir.1973). This Court has been used, as were the bankruptcy court and the district court, to frustrate the rights of the State and the execution of a state court judgment. Cf. Overmyer v. Fidelity & Deposit Co. of Maryland, 554 F.2d 539, 543 (2d Cir.1977) (double costs and attorneys’ fees assessed for using court to frustrate collection of state court judgment).
We assess double costs against Cosmopolitan and Flushing. We award reasonable attorneys’ fees against Cosmopolitan, Flushing and their attorneys. We remand this case to the district court and instruct that court to determine the attorneys’ fees reasonably incurred by the State in this appeal and to assess that amount jointly afid severally against Flushing and its attorneys and jointly and severally against Cosmopolitan and its attorneys.
The appeal of Judge Mishler’s order is dismissed as to both Cosmopolitan and Flushing. Judge Altimari’s order extending the time for Flushing to file a notice of appeal is reversed. The State is awarded double costs and attorneys’ fees and the case is remanded to the district court for the calculation of sanctions. Nothing in this opinion should be interpreted to preclude the State from moving for nor the district court from awarding attorneys’ fees for all of the multitudinous and vexatious proceedings in which Flushing and *518 Cosmopolitan were involved in the federal system.

. The original lessor was the New York Metropolitan Transportation Authority (MTA). In June 1982, the New York legislature transferred ownership of Republic from the MTA to the New York State Department of Transportation. The identity of the actual owner/lessor at any particular time is of no consequence to this appeal. Hence we refer to the State throughout as the lessor.

. We can well appreciate what we assume was Judge Altimari's motivation in granting Flushing’s motion for an extension. Cognizant that briefs had been filed and that oral argument was only days away, Judge Altimari no doubt sought to avoid the potential risk of further complicating or delaying this litigation.

. There are actually a few more but they are equally meritless. We think our actions are *517 sufficiently supported; we hesitate to assault the reader further.