**In re COSMOPOLITAN AVIATION CORP., Debtor.**

**FLUSHING SAVINGS BANK, Plaintiff,**

**v.**

**METROPOLITAN TRANSPORTATION AUTHORITY, New York State Department of Transportation, Cosmopolitan Aviation Corp., James Barr, Trustee for Cosmopolitan Aviation Corp., Defendants.**

**Bankruptcy No. 881–82654–18.**
**Adv. No. 882–0383–18.**

United States Bankruptcy Court,
E.D. New York.

Jan. 29, 1987.

Putney, Twombly, Hall & Hirson, New York City, for Flushing Sav. Bank.

Harry Varon, New York City, for trustee.

Robert Abrams, Atty. Gen., New York City, for N.Y.S. Dept. of Transp.

DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

In this case which has a long, tortuous history, the plaintiff, Flushing Savings Bank, moves for summary judgment, while the defendant, Metropolitan Transportation Authority, cross-moves for summary judgment. *See* prior proceedings: *Flushing Savings Bank v. New York State Department of Transportation (In re Cosmopoli-tan Aviation Corp.)*, 763 F.2d 507, *cert. denied*, —— U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *Flushing Savings Bank v. Metropolitan Transportation Auth., (In re Cosmopolitan Aviation Corp.)*, No. 881–82–6254–18 Slip op. (E.D.N.Y. Dec. 27, 1985); *Metropolitan Transportation Auth. v. Cosmopolitan Aviation Corp.*, No. BA–LT–788–79 Slip op. (May 21, 1982).

The often recounted facts are reiterated here for the purpose of clarity.

On October 8, 1975 the Metropolitan Transportation Authority ("MTA" or "State") as lessor, entered into a lease with Maspeth Seven Leasing Corp., as lessee (subsequently known as Cosmopolitan Aviation Corp. ("Cosmopolitan"), for property located at Republic Airport, East Farmingdale, New York (the "Airport").

In conjunction with the use of the property as a fixed-base aviation operation, Cosmopolitan was to construct certain improvements at the Airport. Pursuant to section 21(c) of the lease, these improvements were the "sole and absolute property of the State."

At issue in this proceeding is section 21(b) of the lease, known as the Buy-back Provision. This section provides:

> In the event of ... termination [of the lease based on a default by Cosmopolitan] ..., MTA shall pay to Lessee, after deducting the aggregate of any amounts due MTA by Lessee (whether any such amount shall be due under the terms of this agreement or otherwise), the unamortized value, computed on a straight-line basis, of the Lessee's cost of improvement work.... In addition thereto and in the event of such termination, MTA shall pay Lessee an amount equal to the penalty, if any, imposed by the lending institution which financed such improvement upon the prepayment by Lessee of its debt to such lending institution.

In September, 1976 Flushing Savings Bank ("Flushing") loaned Cosmopolitan $500,000. As security for the loan, Cosmopolitan executed a mortgage and a mort-

gage note in favor of Flushing. The lease-hold mortgage was recorded with the Clerk of Suffolk County on October 20, 1976. In addition, Cosmopolitan assigned the lease to Flushing by executing an assignment dated September 20, 1976. The assignment was recorded with the Clerk of Suffolk County on October 21, 1976.

The State consented to the mortgaging and assignment of the lease by Cosmopolitan to Flushing by executing and recording a consent dated September 14, 1976.

The improvements constructed by Cosmopolitan were completed on or about March 19, 1977.

On June 6, 1977 Flushing loaned an additional $100,000 to Cosmopolitan. Cosmopolitan executed a second leasehold mortgage and mortgage note in favor of Flushing. The second leasehold mortgage, which was recorded with the Clerk of Suffolk County on June 10, 1977, consolidated both the $100,000 and $500,000 obligations into one obligation for $600,000.

On June 11, 1979 the State, by written notice, advised Cosmopolitan that it was in default of certain lease provisions. This was followed on August 24, 1979 by written notice from the State advising Cosmopolitan that the lease would terminate on September 5, 1979.

The State commenced a summary hold-over proceeding ("hold-over proceeding") against Cosmopolitan on September 6, 1979 in the District Court of the County of Suffolk, Second District, to evict Cosmopolitan from the Airport premises.

Cosmopolitan's answer to the complaint included eleven counterclaims. The seventh counterclaim sought payment from the State for the unamortized cost of the Airport improvements, pursuant to the Buy-back Provision of the lease.

On August 11, 1981 Cosmopolitan filed a Chapter 11 petition in bankruptcy in the United States Bankruptcy Court for the Eastern District of New York.

On August 21, 1981 this court lifted the automatic stay for the purpose of allowing the hold-over proceeding to continue in Suffolk District Court. At the conclusion of that proceeding, by Decision and Order dated May 21, 1982, the possession of the Airport premises was awarded to the State on the ground that the lease had terminated on September 5, 1979 due to Cosmopolitan's default of lease provisions. Previously, by Decision and Order dated August 3, 1981 and entered on August 5, 1981, summary judgment was granted in favor of the State on several of Cosmopolitan's counterclaims including the seventh counterclaim, claim for payment under the Buy-back Provision. Judgment was awarded to the State on all matters on June 2, 1982.

The judgment of the Suffolk District Court was affirmed by the Appellate Term of the Supreme Court for the 9th and 10th Judicial Districts, the Appellate Division for the Second Department and the New York Court of Appeals. *Metropolitan Transportation Auth. v. Cosmopolitan Aviation Corp.,* 99 A.D.2d 767, 471 N.Y.S.2d 872 (2nd Dept.1984), *aff'd.,* 64 N.Y.2d 623, 485 N.Y.S.2d 37, 474 N.E.2d 254 (1984).

"Although never formally notified, Flushing had been aware of the State's summary dispossess proceedings since at least December 1981." *Flushing Savings Bank v. New York State Dep't. of Transportation, (In re Cosmopolitan Aviation Corp.),* 763 F.2d at 510 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).

Despite having had actual knowledge of the pending litigation, Flushing remained aloof from all proceedings involving Cosmopolitan and the MTA until March 25, 1982, when it commenced an action against the State in Queens County Supreme Court.

Flushing's state court action was removed to bankruptcy court in June, 1982 and is the subject of the present adversary proceeding.

The basis of Flushing's complaint is its right to recover payment from the MTA for the unamortized cost of the Airport improvements, pursuant to the Buy-back Pro-

vision of the lease. Flushing alleges that as assignee of the lease it is entitled to receive payment from the State. Furthermore, it contends that September 5, 1979, the termination date of the lease, is the date from which the unamortized cost must be calculated, despite Cosmopolitan's failure to vacate the premises until 1985, six years after the date of termination of the lease.

In December, 1983 Flushing moved for the first time in the Appellate Division of the New York State Supreme Court to intervene in the hold-over proceedings as an interested party whose rights might be adversely affected by the judgment of the State District Court. This attempt to intervene came more than one and a half years after the state district court had rendered its decision and after Cosmopolitan's appeal to the Appellate Division had been fully briefed, argued and was *sub judice* for two and one-half months. That application was denied, as was its motion to intervene in the State District Court to set aside the June, 1982 judgment, its appeal to the Appellate Term and its motion to intervene before the New York Court of Appeals.

 Since this is a core proceeding, this court has jurisdiction to hear the action and is empowered "to determine the amount, if any, due the debtor under the lease and the amount, if any, due Flushing as the holder of a security interest." *Flushing Savings Bank v. Metropolitan Transportation Auth., (In re Cosmopolitan Aviation Corp.)*, No. 881–82–6254–18 Slip op. (Dec. 27, 1985).

## DISCUSSION

The State contends that Flushing is barred in the present action by the principle of *res judicata.* In support of this contention, it refers to the Suffolk District Court's dismissal of Cosmopolitan's seventh counterclaim in the hold-over proceeding.

> The law has long been settled that the effect of a judgment or decree as res judicata depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties or those in privity with them, not only in respect to every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented.

*Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); *see also, Astron Industrial Associates, Inc. v. Chrysler Motor Corp.*, 405 F.2d 958, 960 (5th Cir.1968); 1B Moore's Federal Practice ¶ 0.414[1] et seq. (1984).

For *res judicata* to apply to Flushing, two elements must be satisfied. First, it must be proven that the Buy-back Provision was litigated in the State Court proceeding. Secondly, the issue had to have been litigated between the same parties or their privies. Since Flushing was not a party to the hold-over proceeding, it must have been in privity with Cosmopolitan for it to be precluded from this adversary proceeding.

Furthermore, if the Buy-back Provision was not actually litigated in the hold-over proceeding, as Flushing contends, but could have been raised by Cosmopolitan and privity existed between Flushing and Cosmopolitan, then *res judicata* will still act as a bar in the present proceeding.

## SAME ISSUE

 Flushing's contention that the Buy-back Provision was not litigated in the hold-over proceeding is unsupportable. Cosmopolitan's seventh counterclaim provides *inter alia* :

> 64. Upon information and belief pursuant to paragraph 13 and 12(d) of the lease, it was further agreed by and between the parties that in the event that respondent was caused to default in the performance of any covenant, MTA upon termination of the lease would acquire all of respondent's property, improvements to the premises and would reimburse

COSMOPOLITAN for the unamortized value thereof computed in a straight line manner.

\*　\*　\*　\*　\*　\*

66. The petitioner together with its employees jointly and severally conspired to and did unlawfully, knowingly, wrongfully, maliciously and intentionally interfere with and induce a breach of the lease agreement of October 8, 1975 and of the rights of COSMOPOLITAN therein. The motivation for such conduct was that the aforesaid terms of reimbursement for the capital improvements provided petitioner with an opportunity to acquire the improvements on advantageous terms, and to obtain Respondents' prospective tenants for itself.

The New York District Court of the County of Suffolk, Second District, by order dated August 3, 1981 dismissed Cosmopolitan's seventh counterclaim on the merits, determining it was insufficient as a matter of law. In its May, 1982 Decision and Order the State Court valued the Airport improvements at $790,000. *Metropolitan Transportation Auth. v. Cosmopolitan Aviation Corp.*, No. BA–LT–788–79 Slip op. (May 21, 1982). In addition, it was determined that although the lease obligated the MTA to make payment pursuant to the Buy-back Provision from the date the lease terminated, September 5, 1979, Cosmopolitan's wrongful retention of the premises in violation of paragraph 19 of the lease permitted the period of depreciation to continue until Cosmopolitan actually surrendered the premises. Thus, the amount owed by the State to Cosmopolitan *or its assignee* would not be determined until Cosmopolitan actually vacated and surrendered the premises, an event which took place six years after the termination of the lease. *Metropolitan Transportation Auth. v. Cosmopolitan Aviation Corp.*, No. BA–LT–788–79 Slip op. at 8 (May 21, 1982) (Emphasis added).

The State Court determined that the final amount due be derived at by deducting from the cost of the improvements not only depreciation but in addition all amounts owed by Cosmopolitan to MTA on the date of actual surrender of the premises. *Id.* at 8. Flushing's contention that it is improper to deduct from the cost of the improvements anything other than depreciation, belies a thorough reading of section 21(c) of the lease, which states the

MTA shall pay the Lessee, after deducting the aggregate of any amounts due MTA by Lessee (*whether any such amount shall be due under the terms of this agreement or otherwise*).... (Emphasis added.)

The District Court's findings were affirmed on appeal. *Metropolitan Transportation Auth. v. Cosmopolitan Aviation Corp.*, 99 A.D.2d 767, 471 N.Y.S.2d 872 (2d Dept.), *aff'd.*, 64 N.Y.2d 623, 485 N.Y.S.2d 37, 474 N.E.2d 245 (1984).

Despite this extensive judicial history, Flushing contends that the State's obligation under the Buy-back Provision has not yet had its "day in court." Flushing argues that the $10,000,000.00 claim for damages made by Cosmopolitan in the ad damnum clause of the seventh counterclaim was so unrealistic as to render the counterclaim meaningless.

■ This argument runs counter to acceptable legal practice and principles. It is common practice for ad damnum clauses to state overzealous "ball park" figures for damages, which will not necessarily be recoverable. The possible overstatement of damages in an ad damnum clause does not negate the dismissal with prejudice of a counterclaim by a court of competent jurisdiction. To do so would be to ignore the Full Faith and Credit Clause of the U.S. Constitution, U.S. Const. Art. 4 § 1 and 28 U.S.C. § 1738, State and Territorial Statutes and Judicial Proceedings, full faith and credit (1966).

■ Federal policy dictates that the doctrine of *res judicata* be applied to state court proceedings to both reduce needless litigation and to foster comity between the states and federal systems. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1981) on remand, 647 F.2d

167; *Mack v. Municipality of Penn Hills*, 547 F.Supp. 863 (Pa.1982). This court finds that *res judicata* is properly applied to the issue of the Buy-back Provision in this proceeding, it having been fully litigated by the State Court.

PRIVITY

■ Flushing may continue the present action if it was not a party in the hold-over proceeding and it was not in privity with Cosmopolitan in that action. The "doctrine of privity finds its roots in ancient notion now supplemented by due process clause, that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard; whether such identity is evident is a factual determination of substance, not mere form." *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) citing *Astron Industrial Assoc., Inc. v. Chrysler Motor Corp.*, 405 F.2d 958, 961 (5th Cir. 1968); *Aerojet General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Generally, if a party did not formally appear in an earlier litigation, *res judicata* will not preclude it from future litigation unless it was adequately represented by a party vested with the authority of representation in the first action. *Expert Electric, Inc. v. Levine*, 554 F.2d at 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Aerojet General Corp. v. Askew* at 719, *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Roode v. Michaelian*, 373 F.Supp. 53, 55 (S.D.N.Y.1974).

■ Flushing contends that it was neither a party nor in privity with Cosmopolitan in the hold-over proceeding. Flushing relies on *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (N.Y.1979), in support of this contention. The Court in *Gramatan* held:

> In the assignor-assignee relationship, privity must have arisen after the event out of which the estoppel arises. Hence, an assignee is denied to be in privity with the assignor where the action against the assignor is commenced before there has been an assignment.

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d at 436–37, 414 N.Y.S.2d at 312, 386 N.E.2d at 1332; *accord, In re Arbitration Between Lakeside Hospital and Bernice Dingle*, 70 A.D.2d 658, 417 N.Y.S.2d 16, (N.Y.App.Div. 2d Dept.1979); Restatement (Second) Judgments § 55(2) at 68 (1982).

Flushing argues that since it became the assignee of the lease, with the State's approval prior to the hold-over proceeding, the decision rendered in that proceeding cannot preclude it from the present action. However, Flushing ends its analysis with its recognition of the law of assignment and does not delve into the law of agency. The decision in *Gramatan* does not address situations in which a further relationship exists between the assignor and assignee "from which preclusion may arise." Restatement (Second) Judgments § 55(2)(b) at 68 (1982). In these cases, the rules governing that relationship will apply. *Id.*

Flushing is precluded from this action if it was represented by Cosmopolitan in the prior proceeding.

The Restatement (Second) of Judgments provides:

> § 41(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:
>
> \* \* \* \* \* \*
>
> (b) Invested by the person with authority to represent him in an action
>
> \* \* \* \* \* \*
>
> (2) A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action is not served with process, or is not subject to service of process.

Restatement (Second) Judgments § 41 at 393 (1982).

Flushing became an assignee of the lease on September 20, 1976 by execution of an Assignment by Cosmopolitan. Paragraph Two(A)(2) of the Assignment provides:

A. TO PROTECT THE SECURITY OF THIS ASSIGNMENT, ASSIGNOR AGREES, WITH RESPECT TO EACH LEASE:

\* \* \* \* \* \*

2. At Assignor's sole cost and expense to appear in and defend any action or proceeding arising under, growing out of or in any manner connected with the Lease or the obligations, duties or liabilities of Lessee or guarantor thereunder, and to pay all costs and expenses of the Assignee, including attorney's fees in a reasonable sum, in any such action or proceeding in which the Assignee may appear.

For Flushing to argue that this clause did not constitute a grant of agency is an absurdity. Cosmopolitan was specifically empowered to "defend any action or proceeding arising under or growing out of ... the lease...." Furthermore, Flushing's failure to attempt to intervene at the hold-over proceeding until a second appeal was pending *sub judice* supports the conclusion that Flushing believed Cosmopolitan was representing its interests. Flushing did not seek to adjudicate the issue of the Buy-back Provision in its own name until it became clear that its representative Cosmopolitan, was not going to be awarded the undepreciated cost of the improvement without further offsets. Only then did it bring this proceeding.

The court holds that Flushing was in privity with Cosmopolitan on the issue of the Buy-back Provision in the State Court proceeding and consequently Flushing is barred by the doctrine of *res judicata* from continuing the present action. In view of the court's holding, the issue of the date of the termination of the lease need not be addressed. The court grants summary judgment to New York State on its cross-motion.

SO ORDERED.