## SHAPIRO & ARONSON, Inc., v. FRANKLIN BRASS FOUNDRY et al.

(District Court, E. D. Pennsylvania. October 25, 1920.)

No. 2003.

**Patents ☞328—52,969, for design for chandelier arm, valid and infringed.**
    The Rosenberg design patent, No. 52,969, for a design for a chandelier arm, *held* valid and infringed.

In Equity. Suit by Shapiro & Aronson, Incorporated, against the Franklin Brass Foundry and A. Slotko, doing business as the Famous Chandelier Company. Decree for complainant.

Dodson & Roe, of New York City, and J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for plaintiff.

Julius C. Levi and Hector T. Fenton, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. Letters patent No. 52,969 were issued February 4, 1919, for a design of the arm of a chandelier. The defendant made use of the very thing which was patented. In consequence no question of infringement arises. In further consequence, the sole issue presented is that of validity. Every article of manufacture intended for use presents, or may present, artistic as well as utility features. The obvious motive for the enactment of the law authorizing the grant of patents such as that held by the plaintiff, is to encourage, and by the promise of a monopoly as a commercial reward to stimulate, efforts to produce results in manufacture which appeal to the artistic sense. One of the conditions of the grant of the monopoly is that the design shall be "new, original and ornamental." What may be called the ordinary patent is granted for what is "new and useful." In determining whether an article of manufacture possesses patentable novelty and utility, we have for our guidance fairly definite standards. The rule of admeasurement is fairly well known and definite. In passing upon the originality and beauty of a design, we are driven to the measure which "the elastic chord of feeling" gives us. The test of utility, to which we are often referred, is of very little practical aid to us. It is, of course, true enough that, if a design possesses artistic merit, it is ex vi termini attractive, and because of this will be in demand.

Aside from the difficulty always present of making sure whether commercial success is due to the merits of the commodity or to the arts of the salesman, we have, in every controverted case, the sure result that the design is patentable. This is for the reason that, unless the design makes the article attractive, so as to be in demand, no one would be tempted to trespass upon the rights of the patentee, and no patentee would go to the expense and trouble of defending a monopoly which was not worth defending. The right to monopolize the sale of something which could not be sold would be a monopoly of nothing. It follows, almost as of course, that the only cases presenting them-

selves for decision are cases in which the element of more or less commercial success appears. The test of the appeal made to the artistic sense is intelligible enough, but too variable to be of value. The question, then, is one of taste, the absence of standards of which is voiced for us in the phrase de gustibus non disputandum. More or less unsatisfactory as these tests are, they are all we have to enable us to determine whether a design is "new, original and ornamental."

The doctrine is invoked by the capable counsel for defendant that a design must possess something more than artistic merit, in that it must also be both "new" and "original." These words, although conveying something of the same meaning, are not synonymous. A design may be new in the novelty sense, as a specific design, and yet possess nothing of what is termed originality. The thought intended does not lend itself readily to expression. We get the essence of it in many phrases in common use, such as will readily occur to any one. Originality, among other things, is the converse of the commonplace and of the stereotyped. The essence of the thought is of something originated —of something created. A design may be new, without being original, in this sense. After all, however, originality can be perceived or sensed only by being felt, in much the same way that the artistic appeals to us.

Applying these tests, and starting with the prima facie right implied by the grant of the patent, we feel constrained to make the finding of validity in favor of the plaintiff. This finding is confirmed by the attitude of the defendant. Although the novelty and originality of this design is denied by the defendant, the real defense is based upon the averment that the use of the patented design was abandoned as soon as the defendant learned of the rights claimed by the plaintiff, and that the extent of the use was in itself negligible.

The position is taken that an injunction could have no other than an advertising value, and that a decree for an accounting would be wholly futile. This brings into view the question of a compliance with R. S. § 4900 (U. S. Comp. St. § 9446). The Act of February 4, 1887 (Comp. St. §§ 9476–9477), imposes a penalty of $250 for the unauthorized use of a design. This is in the nature of minimum damages, as it is further provided that, if the profit received from the unauthorized use exceeded $250, the defendant is answerable for the excess. It has been held that the $250 by way of special damages cannot be recovered without a compliance with R. S. § 4900. Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426.

This deprives the patentee of all claim for damages, unless constructive or actual notice of the patented right was given. No constructive notice was given, but actual notice was received on a date which the testimony does not disclose. This finding is made, notwithstanding the absence of proof that definite notice of the number or date of the letters patent was given, because the defendant accepted the notice as notice both of the patent right and that the defendant was infringing, and claims to have acted upon this notice by desisting from the infringement. Whether the defendant did thereafter in-

fringe, and the extent of the infringement as measured in profits received, is a finding best deferred until an accounting is made.

The finding now made is therefore confined to the features of the validity of the letters patent, infringement by the defendant—the right of the plaintiff to a writ of injunction, and to an accounting for profits, with the right to recover for actual damages, or the minimum damages of $250, and for any profits in excess thereof, if it shall afterwards be found that the defendant continued to infringe after notice of the plaintiff's rights. The right of the plaintiff to recover any damages, either actual or the special damages allowed by the act of 1887, is dependent upon the finding hereafter to be made of whether the defendant continued the infringement after notice. The plaintiff, however, is entitled to an accounting for actual profits, independently of any such finding; this court having held that R. S. § 4900, denies the recovery of damages, but not profits. Churchward v. Bethlehem (D. C.) 262 Fed. R. 438.

We appreciate at its full value all which has been so strongly urged upon us in respect to the duty of a chancellor to withhold a decree which would be futile in its operation, or result in nothing other than harassment to the defendant. If it should develop to be the true state of affairs that the defendant was guilty of infringement only in one isolated act, and that he wholly desisted after notice of the plaintiff's rights, there would surely be no real occasion to issue either a writ of injunction or to require an accounting. Acceptance of the unsupported statement of the defendant, however, would be fraught with danger.

This cause being on the equity side of the court, we have control over the costs. If plaintiff goes into an accounting, and there develops that there is nothing of which an accounting can be made, the disposition of the costs of the inquiry will be within the control of the court. All danger of an improper advertising use of the decree can easily be taken care of in the decree which is made.

A decree embodying these findings and incorporating the thought that no advertising use shall be made of the decree may be submitted.