Nathan G. **HORWITT**, Plaintiff,

v.

**LONGINES WITTNAUER WATCH CO., INC., et al., Defendants.**

**No. 70 Civ. 4844.**

United States District Court,
S. D. New York,
Jan. 22, 1975.

Eleanor Jackson Piel, New York City, for plaintiff.

Julius Zizmor, New York City, for defendants.

WHITMAN KNAPP, District Judge.

Plaintiff—the owner of U. S. Patent No. 183,488 for the design of a watch face devoid of any hour indices save a single dot at the 12 o'clock position—is suing the defendants for patent infringement. The defendants, in turn seek a declaration that plaintiff's patent is invalid. The action was tried to the court on October 30 and 31, 1974 and decision was reserved pending receipt by the court of the parties' post-trial memoranda.

There is one procedural matter which must be resolved at the outset. On the eve of trial, plaintiff moved for leave to amend the caption of his complaint to correct a mistake concerning the identity of one of the proper party defendants by substituting Piaget Watch Corporation ("Piaget") as a defendant for and instead of North American Watch Corporation ("North American"), with the amendment relating back to the date of the filing of the original complaint. Plaintiff is not seeking by this motion to do anything more than amend the caption of the complaint—he does not seek to alter the body thereof in any way, other than to correct the defendants as named.

■ It is conceded that the applicable six year statute of limitations has expired and that the complaint can be amended to bring in Piaget as a defendant only if the amendment relates back to the commencement of the action. Determination of the motion is, therefore, governed by Rule 15(c) of the Federal Rules of Civil Procedure, which states that when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence" set forth in the original pleading, an amendment changing the party against whom the claim is asserted shall be deemed to relate back if two conditions are met. If, "within the period provided by law for commencing the action," the party to be substituted

" (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a

mistake concerning the identity of the proper party, the action would have been brought against him."

We think it too clear for argument that Piaget received notice of the action by virtue of service on North American. Defendant conceded as much when it acknowledged that plaintiff served the human being who would have been proper to serve for Piaget (Tr., p. 10). Piaget, a wholly-owned subsidiary of North American, shares with its parent not only its office address but its corporate management. For example, the same man—Gedalio Grinberg—is President of both corporations. Although Piaget is not named in the caption as a defendant, it is repeatedly referred to as a defendant in the body of the complaint. Counsel for North American apparently compounded the misunderstanding by assuming that Piaget was a defendant and referred to it as such on more than one occasion in correspondence with plaintiff's attorney. This final fact alone would seem to satisfy the second requirement of knowledge. F.R.C.P. 15(c)(2).

With respect to the notice requirement, the papers in opposition to this motion failed to establish any facts showing that Piaget would be prejudiced in its ability to conduct a defense on the merits. On that basis, I proceeded with the trial of the action—pending my decision on this motion and subject to Piaget's objections—at the conclusion of which it was apparent that Piaget's defense was in no way prejudiced by the lack of formal service upon it. Plaintiff's motion is, accordingly, granted. Wirtz v. Mercantile Stores Inc. (E.D. Okla.1967) 274 F.Supp. 1000, 1001; cf. Bernstein v. Uris Buildings Corp. (S.D. N.Y.1970) 50 F.R.D. 121; Marino v. Gotham Chalkboard Mfg. Corp. (S.D.N. Y.1966) 259 F.Supp. 953.

## PATENT VALIDITY

Before addressing ourselves to the question of infringement, we must first discuss the issue of the validity of plaintiff's design patent. We begin our discussion with the statutory presumption of validity. 35 U.S.C § 282. Although such presumption has no independent evidentiary value, it does serve to place the burden of proof on the party asserting invalidity. Rains v. Niaqua, Inc. (2d Cir. 1969) 406 F.2d 275. As the court observed in Rains (at 278):

"Reasonable doubt on the issue of validity must be resolved in favor of the patent holder, but in the usual case a preponderance of the evidence determines the issue." (citations omitted)

With that as a background, we turn now to the merits of defendants' challenge to the validity of plaintiff's patent. Their contention is that the watch-face design was fully anticipated by prior art, and is therefore invalid under 35 U.S.C. § 103, which states that a patent may not be obtained

"if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains."

At the trial of the matter, defendants introduced into evidence only two examples of what they claim to be prior art, both of which consist essentially of bare-faced watches. The first—Junghans, U. S. Patent No. 911401 (1909) —consists of a blank watch face with "luminous material" disposed on it, with no hour indices of any sort. The second —a Swiss "jump-hour" watch, circa 1825—also consists of a watch face devoid of hour indices save a small window slightly above center through which the hours can be read. There also is a rather large dial-ette in the lower center of the watch face, which indicates the minutes. When the minute hand passes the "60" mark, the old numeral in the hour window disappears and the new hour jumps into view. Although both these watches lack customary hour indices—a feature they have in common with plain-

tiff's design—neither watch has the feature which distinguishes plaintiff's watch from the prior art: the small "dot" at the 12 o'clock position, which apparently serves as a reference point for the user in telling time.

In its initial rejection of plaintiff's application, the Patent Office cited six[1] examples of prior art, which in its opinion

". . . show that it is old to employ circles on dial faces of timepieces either alone or combined with numerals and, in view of item No. 56C53 of the Hagn publication which discloses a clock face having thereon a single circular marking placed above the hands, no invention is deemed to be involved in omitting all but one of the circular hour markings on the watch face of the type shown by the Hamilton watch of record [a watch entirely without numerals]." Examiner's Answer, Appeal No. 8744, mailed 8/28/57.

The Patent Office Board of Appeals, however, reversed the Examiner's decision. In refusing to sustain his rejection of plaintiff's claim, the Board agreed with plaintiff that

"merely because the prior art may show clock and/or watch faces with numerals and dots, or numerals alone, or dots alone to indicate each of the twelve hours, or may have numerals representing the twelve hours in association with a single dot-like area that this [sic] provides no suggestion for making a watch with only a single dot on the face thereof in addition to the hands."

The Board went on to conclude that plaintiff's design was

"a concept directly contrary to the teachings of the prior art and thus would not occur to a routine designer in the exercise of his trade, and that

it has resulted in a unique design in no way resembling the dials relied upon by the examiner. In our opinion, appellant's design is distinctive, ornamental and aesthetically pleasing, and when viewed as a whole, in no way gives an impression of merely being a modification of any design upon which the examiner relies."

For the reasons set forth below, we concur with the Board's opinion.

Section 171 of Title 35 provides that in order for a design to be patentable it must be "new, original and ornamental". As each of these elements represents a separate and distinct test of patentability, they will be treated individually. Schnadig Corporation v. Gaines Manufacturing Co., Inc. (6th Cir. 1974) 494 F.2d 383, 387.

The issue of novelty is resolved by visual comparison of the challenged design with prior designs. To be patentable, the design viewed as a whole "must produce a new impression upon the eye", and upon the eye of the "ordinary or average observer, not the expert". Deller's Walker on Patents, Vol. 2, p. 748. More specifically,

"The degree of difference required to establish novelty occurs when the average observer takes the new design for a different, and not a modified already existing design." Thabet Manufacturing Company v. Kool Vent Metal Awning Corporation of America (6th Cir. 1955) 226 F.2d 207, 212.

This is the prevailing test. Schnadig Corporation v. Gaines Mfg. Co., Inc., supra, 494 F.2d at 389, Rains v. Cascade Industries, Inc. (3d Cir. 1968) 402 F.2d 241, 247, Hygienic Specialties Co. v. H. G. Salzman, Inc. (2d Cir. 1962) 302 F.2d 614, 617, Application of Bartlett (1962) 300 F.2d 942, 943, 49 CCPA 969. As an "ordinary observer"—and not as an "expert", by any means—I find that plain-

1. Hagn Merchandiser, No. 503, 1951, p. 19, Items 1W771 and 1W777; page 27 #112W129; p. 405, Item No. 56C53

Jewelers' Circular—Keystone, Oct. 1953, p. 94, lower right, watch adv. by Hamilton; p. 95, lower right, lapel watch adv. by Elgin, # 2.

tiff's design meets this test. A design is not anticipated merely because some or all of its elements are old, since the essence of design lies in its appearance as a whole. Gorham Co. v. White (1871) 14 Wall. 511, 81 U.S. 511, 20 L. Ed. 731, Blisscraft of Hollywood v. United Plastics Co. (2d Cir. 1961) 294 F.2d 694. As the Court observed in *Blisscraft* (at 696),

> ". . . the mere fact that a person has utilized in combination a number of elements which severally were well known will not defeat the patentability of the combination." (citations omitted)

In the context of the case at bar, the mere fact that plaintiff's design combines the previously known elements of a blank watch-face and a circle or dot does not render his patent invalid. The very fact of these two elements' long term, but several and independent, coexistence is an indication that their combination in plaintiff's design represents "an exercise of inventive skill and creative talent beyond that of the ordinary designer chargeable with knowledge of the prior art." Blisscraft of Hollywood v. United Plastics Co. (2d Cir. 1961) 294 F.2d 694, 696. Compare Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Company, Inc. (2d Cir. 1958) 260 F.2d 637, 641. As was the Court of Appeals in Rains v. Niaqua, Inc., supra (406 F.2d at 279), we too

> ". . . are mindful that a combination of elements that seems simple in retrospect may not have been so simple at the time it was first produced."

 Originality or inventiveness—the second ingredient of patentability—connotes something that has been created. Shapiro & Aronson, Inc. v. Franklin Brass Foundry (E.D.Pa.1920) 268 F.

551, reh. den., 272 F. 176, mod. on other grounds, 278 F. 435 (3d Cir.). It signifies something which is the converse of commonplace. It is the opposite of sterotyped. Krem-Ko Co. v. R. G. Miller & Sons (2d Cir. 1934) 68 F.2d 872. As the Court of Appeals observed in Berlinger v. Busch Jewelry Co., Inc. (2d Cir. 1931) 48 F.2d 812, 813,

> "A design is not patentable merely because it can be distinguished in appearance from prior designs. Its creation must involve the exercise of the inventive faculty."

Unlike the "average observer" test for novelty, obviousness is measured by the skill of the "ordinary designer". Schnadig Corporation v. Gaines Manufacturing Co., Inc., *supra,* 494 F.2d at 389. The design in question must bespeak a greater skill than that exercised by the average designer who is aware of the prior art. International Silver Co. v. Pomerantz Inc. (2d Cir. 1959) 271 F.2d 69. As the defendants introduced no evidence to rebut the testimony or statements of plaintiff's experts [2] as to the originality of the design, we—in deferring to their expertise—find the design to be original. Our conclusion is supported by the fact that plaintiff's watch design met with not inconsiderable commercial success. Lancaster Colony Corporation v. Aldon Accessories Ltd. (2d Cir. 1974) 506 F.2d 1197, 1200. *See also* Graham v. John Deere Co. (1966) 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545.

 In order for a design to satisfy the final requirement of patentability—that of ornamentality—it "must be the product of aesthetic skill and artistic conception." Blisscraft of Hollywood v. United Plastics Co., *supra,* 294 F.2d at 696. As applied to design, the word "ornamental" relates to something beauti-

---

2. For example,
 "It [the watch design] is so damn original that I've never seen anything like it before." Norman Rockwell, Artist (Exhibit 1, p. 25)

"It was a pleasure to be introduced to your newest idea—a watch face which seems to me to be an entirely new departure in this particular field of design." Greta Daniel, Assistant Curator, Museum of Modern Art (Exh. 1, p. 24).

ful. Bleistein v. Donaldson L. Co. (1903) 188 U.S. 239, 23 S.Ct. 298, 47 L. Ed. 460. Plaintiff testified that his design had been recognized by the Museum of Modern Art by a special award in 1960 and that the watch had become part of the Museum's permanent collection. The further testimony of plaintiff's expert witnesses as to the beauty of the design was not challenged by defendants, nor did they offer their own evidence to contradict plaintiff's contentions. We would agree with plaintiff's experts that the startling simplicity of his design is what renders it so esthetically pleasing. Plaintiff has directed our attention to an observation of the Danish inventor and poet Piet Hien which puts the matter concisely:

> "There is
> one art,
> no more,
> no less:
> to do
> all things
> with art-
> lessness"

Grooks, Piet Hien, M.I.T. Press, Cambridge, 1966.

■ In conclusion, just as evidence of commercial success is relevant to the test of originality, it also

> ". . . is of considerable importance in determining [ornamentality] . . . because in the end the objective of most . . . designs is to enhance saleable value." [citations omitted] Lancaster Colony Corporation v. Aldon Accessories, Ltd. (2d Cir. 1974) 506 F.2d 1197, 1199.

After entering into a royalty agreement with the Movado Watch Agency, Inc., plaintiff received—from 1962 to 1971—in excess of $45,000 in royalties (at a rate of 10% of sales up to June, 1969; thereafter at a rate of 7% of sales). Moreover, we note from the schedule of royalty payments that such payments showed a general upward trend, despite the cut in the royalty percentage in mid-1969 from 10% to 7%.

## PATENT INFRINGEMENT

It is plaintiff's contention that on or about August 1, 1964 the defendant Corum Watch Company commenced the sale and distribution of an otherwise bare-faced watch "bearing what appears to be either a round or two round dots in the place where plaintiff had one round dot in his watch" and that on or about August 1, 1966, defendant Piaget commenced sale and distribution of an otherwise bare-faced watch "showing the name Piaget in the place of and instead of the round point shown in plaintiff's design" (Complaint, ¶¶ 17–18). It is on the basis of the alleged similarity between plaintiff's design—which, as stated in the patent, is "characterized by the contrast in appearance between the dot, the watch hands, and the dial face"—and the defendants' watches that plaintiff grounds his claim of infringement. Although the defendants' watches share with plaintiff's design the feature of blank faces, devoid of any conventional hour indices, none of the alleged infringing watches have the feature which distinguishes plaintiff's design from the prior art, namely the "dot" at the 12 o'clock position. Both defendants' watches do, however, carry their respective tradenames slightly below the 12 o'clock position. In addition, the Corum watches have a small key-like figure—and not "two round dots" as initially claimed by plaintiff—above the "Corum" name, while the Piaget watch dials are surrounded by one or more circles of precious stones. Plaintiff does not dispute defendants' right to imprint their respective tradenames on their products. What he does dispute is the location of those tradenames in the same place as the dot is shown on his watch design. The essence of his claim, therefore, is that his patent is broad enough to preclude the use by other watch manufacturers of any focal device at the 12 o'clock position—whether it be a dot, a tradename or a key device.

■ In his petition for reconsideration of the examiner's rejection of his

patent application, plaintiff claimed that "the single dot or circular mark" constituted the uniqueness which entitled it to patent recognition (plaintiff's Exh. 1, p. 6). In fact, throughout all his application and appeal papers submitted to the Patent Office, patentability is claimed by reason of the "single dot" (plaintiff's Exh. 1, pp. 6, 11, 12, 21, 30, 31, 35, 40). At the trial, however, plaintiff contended that he had patented the "concept" of a watch face devoid of all hour indices save a "focal point" at the 12 o'clock position, and not simply a "dot". In essence, then, plaintiff is claiming a monopoly of the function which the dot serves, and not the dot itself. This he cannot do. Ashley v. Weeks—Numan Co. (2d Cir. 1915) 220 F. 899. As the Court there ruled (at 901):

"In a design patent the appearance is the subject matter of the patent . . . . The patentability of a design is determined by its appeal to the eyes, and not by the presence or absence of a mechanical function."

The function which plaintiff's dot serves is, therefore, irrelevant. It is the "appearance" of that dot which controls. The patent itself specifically limits plaintiff's coverage to the dot, the watch hands and the empty dial face. U. S. Patent No. 183,488 (September 9, 1958). It is beyond dispute that a patent grant "consists only of that which is described and claimed." Aileen Mills Co. v. Ojay Mills, Incorporated (S.D.N.Y.1960) 188 F.Supp. 138, 141, citing Whiting Mfg. Co. v. Alvin Silver Co. (2d Cir. 1922) 283 F. 75, 79, cert. den., 260 U.S. 731, 43 S.Ct. 93, 67 L.Ed. 486 (1922). Moreover, whereas plaintiff's design is graced with the utmost simplicity, defendants' watches are highly ornate and elaborate, especially those encrusted with jewels. This added feature serves to underline the differences between plaintiff's design on the one hand and defendants' watches on the other hand, and precludes a finding of infringement.

The test for infringement is whether in the eye of the "ordinary observer" there is a substantial similarity between the patented design on the one hand and the allegedly infringing designs on the other hand. Gorham Company v. White (1871) 81 U.S. 511, 20 L. Ed. 731. As the Court there observed (at 528),

" . . . if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

To establish infringement under this so-called "eye test",[3] the party claiming infringement must show that there has been an appropriation of the novel elements of the patented design. In light of the state of the prior art (see infra), that which was novel in plaintiff's design was the "single dot" at the 12 o'clock position. Since this feature appears nowhere on defendants' watches, no misappropriation has been—or could be—established.

Furthermore, although neither party introduced evidence or elicited testimony as to the "eye effect" of defendants' watch designs on the "ordinary observer", it seems self-evident that such designs would appeal to a very different type of purchaser than would be attracted to plaintiff's design. On the one hand, someone looking for an ornate watch would probably select one of defendants' watches. On the other hand, someone interested in grace and simplicity would prefer plaintiff's.

Finally, there was no testimony as to whether any "resemblance" between the designs is such as to "deceive [an ordinary] observer." Gorham Company v. White, supra, at 528. Indeed, plaintiff conceded that there had been no deception and declined to offer proof that any purchaser was misled into believing that

3. Laskowitz v. Marie Designer Inc. (S.D.Calif.1954) 119 F.Supp. 541.

defendants' watch designs were the product of plaintiff's creativity.

For the foregoing reasons, I conclude that there was no infringement.

Let judgment enter accordingly.

So ordered.