**RADIO PARTS COMPANY t/a RPC Electronics, Appellant,**

v.

**Richard E. LOWRY, Trustee, Appellee.**

**Civ. A. No. R–90–2327.**

United States District Court,
D. Maryland.

Feb. 26, 1991.

Jefferson V. Wright, James Mitchell Kearney, Lewis S. Goodman, Miles & Stockbridge, Baltimore, Md., for appellant.

James P. Koch, Baltimore, Md., for appellee.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is an appeal from a final decision of the United States Bankruptcy Court for the District of Maryland, Rockville Division, *In Re Columbia Data Products Inc.*, No. 85–A–0718–PM, and *Lowry v. RPC Computer Electronics, Inc.*, Adversary No. 86–A–165–PM. The non-core proceeding was submitted to the Bankruptcy Court pursuant to 28 U.S.C. § 157 (Supp.1990). This appeal is heard under authority of 28 U.S.C. § 158 (Supp.1990).[1]

Each of the issues on appeal will be discussed below. For the reasons stated below, the decision of the Bankruptcy Court with respect to all issues will be affirmed.

### Factual Background

Prior to its bankruptcy, Columbia Data Products, Inc. ("Columbia") manufactured and sold personal computers. On October 12, 1983 Columbia entered into a distributorship agreement with an entity identified only as "RPC Electronics" ("Agreement"). RPC Electronics maintained its principal office at 620 Alpha Drive, Pittsburgh, Pennsylvania. The Agreement was signed on behalf of RPC Electronics by its President, Leonard H. Applebaum and it provided RPC Electronics with the right to distribute Columbia's products in western Pennsylvania, West Virginia, and Ohio in exchange for the promotion, selling, and servicing of Columbia products. Terms of sales were set as 10 days net at 40% off list prices, F.O.B. Columbia Data, and additional discounts of 3% and 5% were offered for sales of 50 and 100 microprocessors, respectively. The Agreement also: provided for a cooperative advertising program between the parties, required Columbia to price-protect goods shipped 30 days prior to a price drop, and gave RPC Electronics 20 days to inspect and reject goods. By its own terms, the Agreement was to be effective until the end of the delivery period which was undefined. Renewal of the Agreement could only be made by writing and the Agreement could be terminated upon 60 days written notice by either party. Finally, the Agreement purported to be integrated and not subject to modification except by a signed writing.

At some point, and in large part due to Columbia's urging, RPC Electronics began selling Columbia's products in Texas. No writing, however, gave RPC Electronics the right to sell Columbia products in Texas. "RPC Computer Electronics, Inc," a Texas corporation was formed in July of 1984. The record, however, lacks any evidence that would indicate that Columbia knew of the organization of a new corporation.

From the time of the Agreement until May 3, 1985, when Columbia filed its voluntary bankruptcy petition under Chapter 11, Columbia sold approximately $6 million dollars worth of goods that were invoiced *solely* to RPC Electronics in Pittsburgh. It is unclear how the goods were ordered. Most of the goods were shipped to Pittsburgh or Cleveland, Ohio although some shipments went to Dallas, Texas. All payments were in the name of RPC Electronics. Debit memos were issued for defective products, co-op advertising, price protection and other incorrect discounts. Columbia answered the debit memos with credit memos.

Debit memos for defective products and co-op advertising were sent to Columbia on forms bearing a logo of either RPC Electronics or RPC Computer Electronics. The logos of RPC Electronics and RPC Computer Electronics, Inc. are confusingly similar. Both logos are composed primarily of the term "RPC" in large block capital letters. In middle of the "RPC" in the respective logos appear the terms "=====RPC

---

1. 28 U.S.C. § 158(a) provides in relevant part that:

    The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges under § 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Electronics" or "==RPC Computer Electronics" in height equaling approximately one-third the size of the "RPC." Moreover, all debit memos had the same Pittsburgh address that had been referenced in the original Agreement.

On December 31, 1985, "R.P.C. Electronics, Inc.," a Pennsylvania corporation, and other "RPC" entities *not* including RPC Computer Electronics Inc. were merged into "Radio Parts Company," a Pennsylvania corporation. Radio Parts Company, however, continued to do business with Columbia as RPC Electronics (hereinafter "Radio Parts t/a RPC Electronics"). The Articles of Merger were executed by Leonard H. Applebaum on behalf of Radio Parts Company and all of the merged entities.

Although it was not merged into Radio Parts, RPC Computer Electronics, Inc. is a wholly owned subsidiary of Radio Parts t/a RPC Electronics. Moreover, RPC Computer Electronics, Inc. and Radio Parts Company t/a RPC Electronics have: 1) the identical president and chief executive officer, Leonard H. Applebaum; 2) the identical address and home office; and 3) a common bookkeeping department.

Reconciling of Columbia's RPC Electronics account was difficult, and the parties had many discussions on the subject beginning in the fall of 1984. The discussions led to various adjustments to the account and additional agreements regarding discounts, price protection, and defective and obsolete goods. A figure of $38,000 was suggested as the outstanding balance of the RPC Electronics account.

The $38,000 was never paid to Columbia despite the Trustee's demand for such an amount. In fact, in the original complaint in this case, the Trustee sought $38,112. The complaint was later amended to seek $313,589, an amount derived from Columbia's admittedly incomplete computer records. At trial, the Trustee presented the testimony of John Lanier, a former Columbia employee who had not worked with Columbia's accounts receivable prior to its bankruptcy. Lanier testified that the balance of the RPC Electronics account was $346,032.57 based on a review of invoices, the payment log, and journal entries. Acknowledging that Lanier's analysis didn't represent the whole picture, the Trustee concluded that the amount owing on the RPC Electronics account was $214,959.

RPC Computer Electronics claimed that it owed nothing. After the Trustee had filed the adversary proceedings, RPC Computer Electronics filed a proof of claim for $162,869 based on defective goods and the failure to provide price protection. These were later asserted as setoffs in the answer along with other credits allegedly not recognized by the Trustee.

### Procedural Posture

The original complaint in this case named as the defendant "RPC Computer Electronics, Inc." The trial of this action was held over four days in April, June, and August of 1989. While the matter was pending, the Trustee filed a motion to amend his complaint to substitute Radio Parts Company t/a RPC Electronics for the named defendant. The Bankruptcy Court permitted the amendment on May 4, 1990. (hereinafter "Amendment Decision"). On May 17, 1990 the Bankruptcy Court entered judgment in favor of the Trustee and against Radio Parts Company in the amount of $111,878. (hereinafter "Debt Decision").

On May 29, 1990 Radio Parts filed a motion for a new trial or in the alternative, to alter and amend the judgment as well as a motion for a jury trial. After a hearing on the motion, the Bankruptcy Court denied Radio Parts' motion for a new trial. Radio Parts then filed a notice of appeal to this Court.

The applicable standard of review in this Court is contained in Bankruptcy Rule 8013 that provides:

> On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to

the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Appellant raises many issues on appeal. They will be discussed, in turn, below.

### A. Amendment and Relation Back of Amendment Relabeling Radio Parts as the Party Defendant

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a), which provides, in relevant part, that after the service of a responsive pleading, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Whether the amendment relates back to the date of the original pleading is governed by Federal Rule of Civil Procedure 15(c) which provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom the a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The adversary proceeding in this case was commenced on March 20, 1986 upon the Trustee's filing of a complaint naming "RPC Computer Electronics, Inc." as the defendant. RPC Computer Electronics was incorporated in July of 1984, well after the 1983 Agreement between Columbia and RPC Electronics. In 1985, RPC Electronics was merged into Radio Parts Company. Under 15 Pa.Cons.Stat. § 1907 (1989), Radio Parts t/a RPC Electronics as the surviving corporation is liable for the debts of RPC Electronics. Six months after the trial in this case, but prior to the Bankruptcy Court's rendering of its decision, the Bankruptcy Court permitted the Trustee to amend his complaint naming Radio Parts t/a RPC Electronics as the defendant.

Before discussing the relevant case law, the Court feels it is necessary to discuss what the record shows with respect to how the Trustee originally incorrectly labeled the appellant. The October 1983 Agreement that was the predicate for the two parties' dealings was entered into by an entity identified only as "RPC Electronics." Additionally, a January 3, 1985 letter that modified the agreement between the parties was between Columbia and "RPC Electronics." Columbia maintained a single account in the name of "RPC Electronics" throughout its entire course of dealing with the RPC entities, and all invoices for payment and credit memos from Columbia were directed to "RPC Electronics." Moreover, all payments from the RPC entities to Columbia were made in the name of "RPC Electronics."

The only evidence that suggests that Columbia may have known it was dealing with two entities prior to the Trustee's commencing the adversary proceeding against "RPC Computer Electronics, Inc." is evidence pertaining to debit memos issued with the confusingly similar logos of the "RPC" entities with the same address. The appellant claims that Columbia must have known that it was dealing with two entities because Columbia pushed for RPC Electronics to begin selling in Texas. The record, however, supports the conclusion that Columbia merely believed it was dealing with a branch of RPC Electronics rather than a distinct corporation as Columbia continued to treat the RPC entities as one and the same.

Based on the record, it is clear to the Court that Columbia was under the impression that since the 1983 Agreement, it had been was dealing with only one entity known only as "RPC Electronics." However, when Columbia filed its complaint on March 20, 1986, RPC Electronics no longer existed as a corporation as it had been

merged into Radio Parts Company. Based on the advice of one of Columbia's employees who had reviewed Columbia's records, the Trustee decided that "RPC Computer Electronics, Inc." was the proper party to sue. There is no evidence in the record regarding why the employee thought RPC Computer Electronics, Inc. was the proper party. Accordingly, a suit was commenced against RPC Computer Electronics with Columbia under the impression that RPC Computer Electronics was the party with whom it had been dealing since the Agreement in October of 1983.

Radio Parts maintains that notwithstanding any initial confusion that may have led Columbia to bring suit against RPC Computer Electronics, Columbia, by way of its May 5, 1988 deposition of Applebaum, was put on notice that Radio Parts and RPC Computer Electronics were two separate and legally distinct entities, and that Columbia had sold to both of them. The Court will quote at length those portions of Applebaum's May 5, 1988 deposition cited in the Bankruptcy Court's decision because these quotes fully support the Bankruptcy Court's conclusion that Applebaum was less than candid with the Trustee and that there was a long conceived strategy to avoid recovery of a judgment against any of the entities.

Q. What is your position with RPC?

A. President.

Q. How long have you held that position?

A. What is the question?

Q. How long have you held the position of president of RPC, approximately?

A. What is RPC? There is no such company as RPC.

Q. You don't understand the question?

A. No.

Q. Okay, You just indicated that you are the president. What are you the president of?

A. Well, you ask me the question.

Q. I am asking you the question.

A. Well, I'm not the president of anything that I can understand the question.

MS. Clark: Off the record.

MR: Koch: No, this could be on the record.

MS. Clark: What does it read, RPC Computer Electronics, Inc. What are you asking?

(Discussion off the record.)

Q. RPC Computer Electronics, Inc., are you familiar with that entity?

A. Yes, sir.

Q. Is that the one you are president of?

A. Yes, sir.

Q. How long have you been president of that?

A. Five years. Maybe four. Four or five.

\* \* \* \* \* \*

Q. I take it the name of the entity that Columbia Data Products dealt with was RPC Computer Electronics, Inc., is that true?

A. Yes.

Q. Are there any other entities that Columbia Data Products, any other entities related to RPC Computer Electronics, Inc. that Columbia Data Products sold goods to, to your knowledge?

A. Radio Parts Company, Inc.

Q. What is the relationship of RPC Computer Electronics, Inc. to Radio Parts Company?

A. It's a wholly-owned subsidiary.

Q. Radio Parts is a whole—

A. No, RPC Electronics is a wholly-owned subsidiary.

Q. Of Radio Parts, Inc.?

A. Right.

Q. So is it your testimony that Columbia Date Products at any time during the period of '83 to '85 actually sold goods to Radio Parts Company, Inc. rather than RPC Computer Electronics?

A. I think it sold to both.

Q. Sold to both. To your knowledge, would there be a distinction on the invoices from Columbia Data Products?

A. I think there was.

Q. Were there any other entities that Columbia sold to besides—

A. No.

Q. Those are the only two involved?

A. (Nodding head indicating yes.)

Q. Does Radio Parts Company, Inc. have any other subsidiaries besides RPC Computer Electronics?

A. No.

Q. Is Radio Parts Company itself a subsidiary of any other entity?

A. No.

Q. Are there any entities, whether they be corporations, partnerships, proprietorships, whatever, that are affiliated or related in any way to either Radio Parts Company, Inc. or RPC Computer Electronics?

A. No.

Q. What is the state of incorporation of the RPC Electronics, Inc.

A. Texas.

Q. And Radio Parts Company?

A. Pennsylvania.

\* \* \* \* \* \*

Q. Can you list the location of the principal office or offices of RPC Computer Electronics, Inc.?

A. 749 Miner Road, Highland Heights, Ohio.

Q. Anywhere else?

A. No.

Q. What about Radio Parts Company, Inc.?

A. 749 Miner Road, Highland Heights, Ohio.

\* \* \* \* \* \*

Q. So I take it, RPC Computer Electronics was set up for that purpose, to distribute computer products, as opposed to electronic components?

A. Excuse me. What is the question?

Q. RPC was set up, I take it—

A. Which RPC, sir?

Q. The one you have been testifying about.

A. You keep saying RPC. I'd like to know what company you are talking about.

Q. RPC Computer Electronics.

A. Fine.

Q. Is there another RPC?

A. No. I just want to know what you are talking about.

Q. Do you understand when I make reference to RPC, I mean RPC Computer Electronics?

A. Is that what you want me to understand?

Q. Yes, I would.

A. Okay, then I will understand it.

MS. CLARK: From now on, whenever you refer to RPC, That will mean RPC Computer Electronics, correct?

MR. KOCH: Yes, that's acceptable.

Amendment Decision at 5–8.

The Court further notes that despite Applebaum's grudging comments during the deposition with respect to separate entities, RPC Computer Electronics continuously and unabatedly referred to subject matter in such a manner that Columbia was led to believe that it had brought suit against the party responsible for all of the dealings between Columbia and "RPC Electronics." In RPC Computer Electronics' answers to interrogatories completed on May 20, 1987 ("Interrogatories"), RPC Computer Electronics stated that *its* relationship with Columbia began in 1983 and further referred to the distributor agreement dated May 5, 1983 and reseller agreement dated October 12, 1983 *between Columbia and RPC Computer Electronics, Inc.* Interrogatories at 4–5. In RPC Computer Electronics' reply memorandum in support of motion for reconsideration filed on June 10, 1987 ("Reply"), RPC Computer Electronics refers to "purchase and sales transactions between Columbia Data and [RPC Computer Electronics, Inc.] since January 1, 1983. Reply at 2. In the trial memorandum of RPC Computer Electronics, Inc. filed with the Bankruptcy Court on April 3, 1989 ("Trial Memorandum"), RPC Computer Electronics states that "the relationship between RPC [previously designated to represent RPC Computer Electronics, Inc.] and Columbia Data began in early 1983. From that time to the time that Columbia filed for bankruptcy, the *two* companies engaged in hundreds of transactions." Trial Memorandum at 1–2 (emphasis added).

RPC Computer Electronics, in fact, was not in existence in 1983 as it was incorporated in July of 1984. The ceaseless refer-

ences to the proposition that RPC Computer Electronics had contracted with Columbia in 1983 unambiguously indicated to Columbia that it had brought suit against the party with whom it had done business since 1983. This belief was reinforced by RPC Computer Electronics' statement in the Trial Memorandum indicating that there were only two companies doing business since 1983, Columbia and RPC Computer Electronics.

RPC Computer Electronics' answers to the Trustee's second set of interrogatories filed with the Bankruptcy Court on May 4, 1988 ("Answers"), only one day prior to Applebaum's deposition, provide additional evidence that Columbia was led to believe it had brought suit against the entity with whom it had done business since 1983. In one section of the document, RPC Computer Electronics claimed that Columbia owed it credits for co-op advertising. A review of the documents in the exhibit pertaining to the advertising, however, reveals that a significant majority of the credits sought by RPC Computer Electronics pertained to advertising that had taken place prior to July, 1984, the date of RPC Computer Electronics incorporation. Answers at 8 and exhibit E. Similarly, RPC Computer Electronics referred to an $89,000 credit that it should have received for returned goods. Answers at 12–13 and exhibit H. A review of the exhibit clearly shows that the items for which credits were claimed were delivered to Ohio and not Texas well before July, 1984. Moreover, exhibit G of the same document relates to a purported credit for defective goods that were returned from an Ohio, as opposed to a Texas, vendor. Answers at 11.

In short, the Court concludes that the Bankruptcy Court was completely correct in holding that the RPC entities had engaged in trial by ambush. In fact, the Court believes that the Bankruptcy Court did not go far enough as the activities of the RPC entities could easily have been classified as fraudulent. The Court further concludes that the case law supports the Bankruptcy Court's decision to allow Columbia to amend its complaint.

The first issue the Court must determine is whether this case involves an amendment changing the parties or one merely correcting a misnomer. *See* 6A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 1498 at 130–39 (1990) (distinguishing between correcting misnomer and changing party). The Bankruptcy Court analyzed this case as one where the amendment changed the party. As explained below, the Court believes that the amendment in this case relabeling the defendant from "RPC Computer Electronics, Inc." to "Radio Parts Company t/a RPC Electronics" is best characterized as an amendment correcting a misnomer. Nevertheless, the Court believes that even if this case was one involving an amendment changing the parties, the Bankruptcy Court was correct in allowing the amendment. The court, therefore, will first analyze this case as if it were a case in which the party was changed before explaining why this case is better characterized as one involving a misnomer.

### 1. *Amendment Changing Party*

In *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the Court listed the elements for an amendment changing a party to relate back to the original complaint:

> Relation back is dependant upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* at 29, 106 S.Ct. at 2384.

In the instant case, the Bankruptcy Court found that Radio Parts Company t/a RPC Electronics clearly had notice of its connections with this lawsuit because of the identity of interest between it and RPC Computer Electronics, Inc. As stated in

6A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 1499 at 146–151 (1990) (footnotes omitted):

> Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other. As is true of other aspects of Rule 15(c), the objective is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment....
>
> An identity of interest has been found between a parent and a wholly owned subsidiary as well as between related corporations whose officers, directors, or shareholders are substantially identical and who may have similar names or conduct their business from the same offices....
>
> Typically, the intended defendant receives notice of the action and is aware of plaintiff's mistake because service is made on one of its agents, who may or may not also be an agent for the named defendant.

The analysis of the Bankruptcy Court was based on the identity of interests theory. Its conclusion that the elements of *Schiavone* had been satisfied was completely correct.

The way this case was defended by RPC Computer Electronics, i.e. asserting that it was the entity that had done business with Columbia since 1983 and claiming credits for items particular to RPC Electronics, makes it perfectly clear that the RPC entities knew and contributed to the fact that Columbia viewed the RPC entities as consisting of one entity. With that in mind, it is perfectly clear that the claim against Radio Parts Company t/a RPC Electronics arose out of the conduct set forth in the original pleading which pertained to the relationship between Columbia and the RPC entities since the October 1983 Agreement. Second, Radio Parts Company t/a RPC Electronics clearly received notice of the action as the complaint was served on its president and chief-executive officer, Applebaum, at its corporate residence.

Third, it is completely clear from the way this case was defended that Radio Parts Company t/a RPC Electronics knew that it would have been the named defendant but for the Trustee's mistake. Finally, Radio Parts Company t/a RPC Electronics had notice and knew of Columbia's mistake well before the statute of limitations expired.

Radio Parts Company t/a RPC Electronics claims that it was prejudiced by the post-trial amendment because it had no opportunity to raise defenses, conduct discovery, or introduce evidence. Radio Parts also claims that it had no opportunity to prove the alleged separate account arrangement between 1) Columbia and Radio Parts Company t/a RPC Electronics and 2) Columbia and RPC Computer Electronics, Inc.

First, the Court finds that the Bankruptcy Court's conclusion that had Radio Parts been the named defendant at trial, the trial wouldn't have been handled any differently is not clearly erroneous. Amendment Memorandum at 10. As pointed out by the Bankruptcy Court, RPC Computer Electronics, Inc. amassed over 700 exhibits and could not have been better prepared. Moreover, Radio Parts' claim that it was unable to raise defenses must fail in light of the fact that RPC Computer Electronics, Inc., a wholly owned subsidiary of Radio Parts Company t/a RPC Electronics, raised defenses and claimed set-offs that were particular to Radio Parts Company t/a RPC Electronics. In other words, the only defense that Radio Parts Company t/a RPC Electronics is able to articulate that it was not able to assert based on the fact that it was the incorrectly labeled defendant is that there was a separate account relationship between Columbia and each of the RPC entities.

As pointed out by the Bankruptcy Court, "[w]here intercorporate relationships exist in cases such as this all corporations are held to a higher degree of frank disclosure of mistakes such as was made in this case, than is required in other cases where no close relationship exists." *Gifford v. Wichita Falls & Southern Railway Co.,*

224 F.2d 374, 377 (5th Cir.1955), *cert. denied*, 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787 (1955); *see also Travelers Indemnity Co. v. United States*, 382 F.2d 103, 106 (10th Cir.1967); *Marino v. Gotham Chalkboard Mfg. Corp.*, 259 F.Supp. 953, 954 (S.D.N.Y.1966). The failure to raise the fact that there may have been separate accounts for the RPC entities was part and parcel of the RPC entities' ploy to create the appearance that Columbia had correctly labeled the defendant it had done business with since 1983. The Court, therefore, concludes that the inability to raise the defense of separate accounts is the natural result of the chosen strategy of the defense of the RPC entities, and that the appellant is estopped from asserting any prejudice therewith.

2. *Amendment Correcting a Misnomer*

■ As stated previously, the Court believes this case is better characterized as one involving an amendment correcting a misnomer as opposed to one changing a name. "A misnomer is involved when the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect. Under those circumstances, an amendment merely correcting that description does not entail the actual 'changing' of the parties and it should be allowed as a matter of course as long as it satisfies the standard in the first sentence of Rule 15(c)." 6A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 1498 at 130 (1990). As stated previously, it is clear that the first sentence of Rule 15(c) is satisfied in this case as the claim in the amended pleading certainly arises out of the conduct set forth in the original pleading by the Trustee.

*Datskow v. Teledyne, Inc., Continental Prod. Div.*, 899 F.2d 1298 (2d Cir.1990) *cert. denied*, —— U.S. ——, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990), involved an airplane containing an engine manufactured by "Teledyne Continental Motors Aircraft Products, a Division of Teledyne Industries, Inc." Plaintiff, executrix of the estate of a person who had been killed in an airplane accident, filed a complaint against a defendant identified as "Teledyne, Inc., Continental Products Division." Teledyne Industries, Inc., the manufacturer of the airplane, was in fact a wholly-owned subsidiary of Teledyne, Inc. The court recognized that the plaintiff had made clear that the entity it wished to sue was the manufacturer of the engine, and that the address listed in the complaint was the address of the airplane manufacturer. With respect to the fact that defendant had incorrectly identified the corporate entity as "Teledyne, Inc.," an entity that actually existed, as opposed to "Teledyne Industries, Inc.," a separate entity, the court stated: "Teledyne Industries, Inc." has chosen do business with a name that uses the key word of its parent's name. It is part of a family of companies, most of which use the name "Teledyne" in their corporate name.... "At the site of its aircraft engine division, Teledyne Industries, Inc. leads the public to believe that the division's corporate name is just "Teledyne" the designation that plaintiffs used in their complaint." *Id.* at 1301–02. The court went on to hold that:

> Unlike *Schiavone*, in our case the name in the caption approximates the correct name of the defendant, the correct name is not readily identifiable, and the defendant has taken the risk of incorrect identification by conducting business under a name easily confused with those of its parent and its affiliated companies and divisions.

*Id.* at 1302.

The case *sub judice* clearly is analogous to *Datskow*. The Trustee's complaint sufficiently alerted Radio Parts Company t/a RPC Electronics that it was the party being sued. The RPC entities knew that the Trustee intended to name the defendant with whom Columbia had done business since 1983 and they continuously led the Trustee to believe that he had correctly labeled the defendant. Moreover, the complaint was served on Leonard Applebaum, the president and chief executive officer of both Radio Parts Company t/a RPC Elec-

tronics and RPC Computer Electronics, Inc. at the address shared by both companies.

The Trustee could not readily identify the correct entity to sue as Radio Parts Company had entered into the Agreement in the name of "RPC Electronics," the same name which appeared on all checks issued in payment for goods purchased from Columbia. However, no such entity exists. The correct name of the defendant, Radio Parts Company, was not readily identifiable as Columbia had neither received any correspondence from nor done business with an entity using that name.

By conducting business in the name of RPC Electronics, Radio Parts Company clearly took the risk that it would be confused with RPC Computer Electronics, Inc, its wholly owned subsidiary. In addition to the similarities in name and the identity of corporate offices and president, the logo of RPC Computer Electronics, Inc. is nearly identical to that of RPC Electronics. As in *Datskow*, this case is best characterized as one where the Trustee merely amended the complaint to correct a misnomer. Accordingly, the Bankruptcy Court was correct in permitting the amendment and further was correct in holding Radio Parts Company t/a RPC Electronics liable for the full amount pertaining to Columbia's "RPC Electronics" account.

## B. Procedural Due Process

In an argument similar to the one used by Radio Parts in claiming that it was prejudiced by the amendment, Radio Parts claims that it was denied due process of law due to the Bankruptcy Court's decision to allow the amendment after the trial. Radio Parts essentially claims that the timing of the amendment precluded it from being able to present its case before an impartial decision maker.

As stated previously, excepting the "separate account" defense, Radio Parts is unable to articulate any defense that it would have asserted had it been correctly labeled as the defendant, and the only reason the "separate account" defense was not raised is that such defense would have notified the Trustee of the mistake under which he was operating.

In *Fluoro Electric Corp. v. Branford Assoc.*, 489 F.2d 320 (2d Cir.1973), the plaintiff originally named the defendant as "Branford Associates, a corporation." The complaint was answered and the suit was defended by "Branford Developers, Inc." After a jury trial, a judgment was entered against "Branford Associates, a corporation." While attempting to collect the judgment, the plaintiff discovered that the majority of the assets were held by "Branford Associates" a partnership. Accordingly, plaintiff sought to substitute "Branford Associates" a partnership as the defendant. *Id.* at 322–23. The partnership claimed: 1) that the plaintiff sued the corporate defendant as he had sought to do; 2) that the corporate defendant appeared in the action by its proper name; and 3) that the jury verdict ran solely against the corporate defendant. Accordingly, the partnership maintained that it could not be held liable for the judgment because it 1) was not a party to the contract in dispute, 2) was not served in this action, and 3) had never had its day in court. *Id.* at 323–24.

The *Fluoro* court noted that the following facts that are analogous to the case *sub judice*. The party entering into the original contract with Fluoro Electric Corporation signed as "Branford Shopping Center Developers, Inc," an entity that didn't exist. The person who was served in the suit was both one of the partners of "Branford Associates" and the principal officer of "Branford Developers, Inc." All of the invoices sent by Fluoro were addressed to "Branford Associates," but payment was made by check of "Branford Developers, Inc." Other communications to Fluoro were done in the name of "Branford Associates." *Id.* at 324–25. Moreover, in affirming the trial judge's order granting the motion to substitute "Branford Associates" for "Branford Associates, a corporation" as the named defendant the court noted that:

It is only in retrospect, therefore, that [Branford Associates] now attempts to claim that it and Branford Developers, Inc., are really two separate entities. Prior to the plaintiff's motion granted

[sic] ..., that distinction was blurred beyond recognition, a situation permitted if not actively encouraged by the individuals who ran and represented both "defendant" organizations. To the plaintiff, to the trial judge, and to the jury it was plain that only one group of men had contracted with the plaintiff, a group known as Branford Associates. That this group was styled a corporation in the complaint and thereafter occasionally so referred to did not mean that the party sought to be charged by the plaintiff was a corporate defendant, regardless of name. On the contrary, under the circumstances, it is clear that it was Branford Associates which the plaintiff sought to hold liable regardless of its legal status.

*Id.* at 325 (footnote omitted).

The instant case is completely analogous. Prior to Columbia's motion to amend its complaint, the distinction between Radio Parts Company t/a RPC Electronics and RPC Computer Electronics, Inc. was thoroughly blurred beyond recognition by the individual, Applebaum, who ran both organizations. Similarly, it was clear to the Trustee and the Bankruptcy Judge and the Appellant that only RPC Electronics had contracted with Columbia and that the Trustee sought to hold RPC Electronics liable.

In *Horwitt v. Longines Wittnauer Watch Co.*, 388 F.Supp. 1257 (S.D.N.Y. 1975), the plaintiff moved to substitute the Piaget Watch Company for the North American Watch company on the eve of trial. Piaget was a wholly owned subsidiary of North American, and the two shared offices and management including the same president. Although Piaget had not been named in the caption of the complaint, it was referred to in the complaint. Additionally, North American compounded the misunderstanding by referring to Piaget as a defendant in correspondence sent to the plaintiff. The court, upon finding that Piaget's defense had not been prejudiced despite the lack of formal service upon it, granted the motion to amend *after trial*. *Id.* at 1258–59.

*Horwitt* and *Fluoro* clearly indicate that procedural due process rights are not necessarily violated by the post trial amendment correcting the name of the defendant. Based on the following facts: 1) the RPC entities and their sole president knew that the Trustee was attempting to bring suit against the company with whom Columbia had done business since 1983, i.e. Radio Parts Company, when its wholly owned subsidiary was named in the complaint; 2) the RPC entities contributed to the misunderstanding of the Trustee; and 3) that the amendment in this case corrected a misnomer rather than adding a new party, the Bankruptcy Court decision holding that Radio Parts Company was not denied due process will be affirmed.

C. Miscellaneous Claims Dependant on Improper Amendment Claim

Appellant makes various claims that were dependant on its claim that the Bankruptcy Court incorrectly permitted the amendment naming Radio Parts Company as the defendant. Because this Court holds that the amendment in this case merely corrected a misnomer and did not add a new party within the meaning of Federal Rule of Civil Procedure 15(c), defendant's derivative claims must fail.

Accordingly, the Court finds that Radio Parts was bound by the consent of RPC Computer Electronic, Inc. to the entry of final judgment by the Bankruptcy Court and that Bankruptcy Court was correct in finding that Radio Parts was not entitled to a new trial or an alteration in the judgment. Moreover, without deciding whether or not the right to a jury trial existed, Radio Parts waived any rights to a jury trial it may have had due to the RPC entities' failure to file a timely request for a jury.

D. Amount of the Alleged Debt

■ Radio Parts claims that Bankruptcy Court committed reversible error in finding that the RPC entities and Columbia had not entered into an agreement that the amount owed by the RPC entities was $38,112.

Maryland law provides that:

An account stated is an agreement between the parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such a balance.

*Wathen v. Pearce,* 175 Md. 651, 661, 3 A.2d 486 (1939). Nevertheless, as recognized by the Bankruptcy Court, "[l]acking an agreement, there can be no account stated." Debt Decision at 12.

Radio Parts claims that the RPC entities and Columbia reached an agreement at a May 22, 1985 meeting regarding the amount owed to Columbia. Radio Parts claims that the circumstances of the meeting are substantiated by an August 13, 1985 letter from one of its employees to an employee of Columbia that stated "[t]here *seems* to be an agreement that our account balance with Columbia stands at $38,000, excluding a $22,737 price protection debit." (emphasis added). No response to the letter was ever made by Columbia. Radio Parts further relies on post-bankruptcy demand letters from the Trustee's counsel demanding the payment of $38,112 and the original complaint in the case requesting the same amount. In one of the demand letters, the Trustee's counsel stated:

> As you may know, Columbia and RPC reached an accord and satisfaction respecting the amount owing to Columbia prior to bankruptcy and the filing of this law suit. The amount of the Trustee's claim reflects the agreed upon amount.

The evidence proffered by Radio Parts does not clearly establish that an agreement was reached. The unresponded to letter by the Radio Parts' employee stating that "[t]here *seems* to be an agreement" clearly is not authoritative. Moreover, the post-bankruptcy demand letters by the Trustee's counsel interpreting the May 22, 1985 meeting are not binding on the Court. Furthermore, at trial, a representative of Columbia present at the May 22, 1985 meeting testified that no agreements were reached at the meeting.

Viewing the totality of the record, and giving due regard to the Bankruptcy Court's ability to judge the credibility of the witness, the Court cannot say that the Bankruptcy Court's holding that no agreement was reached was clearly erroneous. Accordingly, the Bankruptcy Court's decision holding that no agreement was reached must be affirmed.

### E. Testimony and Analysis of John Lanier and Burden of Proof

As a final point of contention, Radio Parts claims that the Bankruptcy Court committed reversible error by admitting the testimony of John Lanier. Further, Radio Parts claims that absent the testimony of John Lanier, the Trustee cannot sustain his burden of proving the amount owed by the RPC entities to Columbia. Because the Court finds that the testimony and analysis of John Lanier was properly admitted, Radio Parts' claim regarding the burden of proof must fail.

■ John Lanier began employment with Columbia in March of 1984 but did not become involved with Columbia's accounts receivable area until after Columbia's bankruptcy. By June of 1985, Lanier had become Columbia's accounting manager with his main responsibility being the development of account balances for the Trustee. Based on his review of Columbia's invoices, check payments, credit memos, and journal entries, Mr. Lanier presented a summary exhibit demonstrating that the amount owed on Columbia's RPC account was $346,032.57. Lanier admitted that he had no first hand knowledge of the sources of his summary. However, it is clear that the sources of the summary were all business records of Columbia. Fed.R.Evid. 803(6).

The Bankruptcy Court found that Lanier's testimony was admissable pursuant to Federal Rules of Evidence 701 and 1006, and stated that "Lanier needed no firsthand knowledge of the transactions to compile the records of Columbia Data. Anyone conversant with the principles of elementary mathematics and basic bookkeeping could have done the same." The Court

believes that the analysis of the Bankruptcy Court was completely correct.

Federal Rule of Evidence 701 provides that:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of the fact in issue.

It is clear that Mr. Lanier's opinion regarding the amount of the debt was based on his knowledge gained upon review of Columbia's business records. His opinion, therefore, rationally was based on his perception despite the fact that he did not have first hand knowledge regarding the creation of the records. Moreover, it is clear that Mr. Lanier's opinion was helpful to a determination of the fact in issue, the amount of the debt. His opinion, based on his review of the records and simple arithmetic, provided a starting point for ascertaining the amount of the debt.

It is further clear that the summary exhibit that was admitted by the Bankruptcy Court detailing Lanier's opinion was properly admitted. Federal Rule of Evidence 1006 provides, in relevant part, that "[t]he contents of voluminous writings ... which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation." Moreover, as recognized by the Bankruptcy Court, a summary must be based on admissable evidence and must accurately summarize the evidence. *E.g., Needham v. White Laboratories, Inc.,* 639 F.2d 394, 403 (7th Cir. 1981), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981). In the instant case, Mr. Lanier's summary was based on admissable business records of Columbia.

Radio Parts has not demonstrated any errors Mr. Lanier's summary that would indicate that the summary was anything but accurate. Rather, Radio Parts points to an out of context statement by the Bankruptcy Court to support its claim that the summary was inaccurate. It is true that the Bankruptcy Court stated that "an accu-

rate picture of RPC's account cannot be derived solely by looking at the invoices and corresponding payments." Debt Decision at 3. Nevertheless, the Bankruptcy Court made this statement when explaining that the payments by Radio Parts did not pertain to individual invoices, but rather may have pertained to multiple invoices that may have contained disputable items. *Id.* Moreover, Lanier's testimony was not based merely on invoices and payments but rather was based on a review of an entire panoply of business records.

The Court, therefore, finds that Mr. Lanier's testimony and summary exhibit were properly admitted into evidence by the Bankruptcy Court and that based on Lanier's testimony, the Trustee clearly met his burden of proof.

Accordingly, it is this 26th day of February, 1991, by the United States District Court for the District of Maryland,

ORDERED:

1. That the final decision of the United States Bankruptcy Court for the District of Maryland, Rockville Division, *In Re Columbia Data Products Inc.,* No. 85–A–0718–PM, and *Lowry v. RPC Computer Electronics, Inc.,* Adversary No. 86–A–165–PM, is hereby affirmed.